RALPH ZULLO *v.* DEFOREST W. SMITH

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued November 14, 1979—decision released February 12, 1980

*Bruce L. Levin,* with whom, on the brief, was *Keith D. Dunnigan,* for the appellant-appellee (defendant).

*James G. Verrillo,* for the appellee-appellant (plaintiff).

COTTER, C. J. The plaintiff Ralph Zullo brought this action for breach of contract claiming damages for lost profits due to the failure of the defendant DeForest W. Smith to purchase his property for $90,000. Zullo later sold it for $67,500 after he had received a letter from the defendant stating that

he was terminating the contract and requesting the return of his deposit of $9000. The plaintiff alleged that the termination was improper because the contract was conditional only upon the obtaining of a building permit from the city of Milford and that the defendant had failed diligently to pursue the obtaining of the permit. The defendant Smith filed a counterclaim seeking a return of his $9000 deposit.

The plaintiff's action was based upon an agreement to sell and convey to the defendant a parcel of real property located in Milford for the purchase price of $90,000. The contract provided in pertinent part: "This contract is expressly contingent upon buyer's ability to obtain a building permit for a two level office building, 5000 square feet per level. In the event that buyer does not notify seller of his inability to obtain said building permit on or before January 31, 1974 this contract shall become unconditional. Buyer further represents that he will proceed with all due diligence to obtain said building permit. . . . If Buyer notifies Seller of Buyer's inability to obtain said building permit on or before January 31, 1974, then this contract shall be declared null and void and all deposit monies shall be returned to Buyer immediately." The defendant received a final, executed contract from the plaintiff on January 16, 1974. Thereafter, the defendant advised the plaintiff that he desired to terminate the contract; in doing so he sent a letter which the plaintiff received on January 28, 1974, stating in part: "Please accept this letter as formal notification that we have been unable to finalize our plans for the subject property and hereby officially terminate the contract I had with you for same. . . . By copy of this letter, I am hereby requesting

Attorney Zeisler to release the $9,000.00 deposit he is holding on your property in accordance with the terms of the contract."

The trial court found that the "defendant terminated the contract because he lost his prime tenant and not because of the inability to secure a permit" and concluded that "[t]he letter of January 28, 1974, was insufficient to terminate the contract because it does not cite as a reason defendant's inability to secure a permit." Thus, the trial court concluded that the defendant was not entitled to the return of his $9000 deposit together with interest as the defendant claimed. The trial court also concluded that the defendant breached the contract and that the plaintiff was entitled to damages. It further determined, however, that the plaintiff suffered no actual loss by virtue of the defendant's breach because there was no difference between the contract price and the value of the land to be conveyed.

The defendant has appealed claiming that the trial court erred in concluding that the defendant's letter of January 28, 1974, was insufficient to terminate the contract because it did not cite as a reason the defendant's inability to secure a building permit. The plaintiff has filed a cross appeal claiming that the trial court erred in deciding that the plaintiff suffered no actual loss after the court had determined that the defendant breached the contract.

In relation to the defendant's claim, it is significant that the court concluded that the "defendant exercised due diligence in attempting to obtain a building permit for the plaintiff's property." The trial court found a series of facts which recite the numerous steps the defendant took to obtain a building permit for the property. Neither these

facts nor the trial court's conclusion based on them has been attacked by the plaintiff in this appeal; it is thus uncontroverted that the defendant exercised due diligence in attempting to obtain the permit.

The finding indicates that prior to and simultaneous with the execution of the contract, the defendant submitted an application for site-plan approval as required by local laws. He continued to attend and participate in meetings and discussions with various commissions since these agencies, which included the sewer commission, were required to grant approval before a building permit could be issued. After the defendant had transmitted the application and plans to the Milford planning and zoning authority, on January 16, 1974, it was found that the authority in Milford responsible for the site-plan approval was not meeting until January 29, 1974. The defendant asked the mayor of Milford to expedite the site-plan approval; satisfied the requirements of the engineering office; had the police study the traffic impact of his proposal; and sent a letter to the planning and zoning authority.

The defendant, however, ran into difficulty in attempting to have the requisite sewer application approved before January 31, 1974. After the execution of the contract on January 16, 1974, the defendant discovered that the next meeting of the sewer commission was not until February. The defendant had several discussions with the sewer commission in January of 1974 and requested a special meeting of the commission which was denied by its chairman. The sewer application was never approved or disapproved. Even if the defendant had obtained prior approval of his site plan by the city engineer,

the chairman of the sewer commission was unwilling to conduct a telephone canvass of the commission's members to obtain approval for the defendant's requested sewer connection. Simply put, the defendant's efforts to obtain the building permit by January 31, 1974, were stymied by the impossibility of receiving sewer approval by that date.

In light of the aforementioned facts and the trial court's uncontroverted conclusion that the defendant exercised due diligence in attempting to obtain the building permit, the defendant contends he had the right to terminate the contract. We agree. In the present case, the contract provides in pertinent part that "[i]f Buyer notifies Seller of Buyer's inability to obtain said building permit on or before January 31, 1974, then this contract shall be declared null and void and all deposit monies shall be returned to Buyer immediately." The clear meaning of the quoted sentence from the contract is that if the defendant gave the plaintiff sufficient notice by January 31, 1974, of his inability to obtain a building permit by January 31, 1974, the defendant was entitled to terminate the contract and to the return of his $9000 deposit. Thus, the contract expressly gave the defendant the privilege and the power to terminate by giving the requisite notice. See *Stern & Co.* v. *International Harvester Co.*, 148 Conn. 527, 532, 172 A.2d 614; *Acme Markets, Inc.* v. *Dawson Enterprises, Inc.*, 253 Md. 76, 251 A.2d 839; *Central Ohio Co-Operative Milk Producers, Inc.* v. *Rowland*, 29 Ohio App. 2d 236, 281 N.E.2d 42; 1A and 6 Corbin, Contracts §§ 265, 1266; annot., 166 A.L.R. 391.

The plaintiff contends that the defendant was precluded from terminating the contract because the

reason the defendant sought to terminate was due to the loss of his prime tenant and that reason was not provided for in the contract. The plaintiff thus seeks to read the contract as providing that the defendant could terminate only if his sole reason for termination was the inability to obtain a building permit by January 31, 1974.

The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494, 152 A.2d 316. The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 616-17, 164 A.2d 413; see 3 Corbin, Contracts § 542; 4 Williston, Contracts (3d Ed.) § 609. It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties. *Farmers & Mechanics Savings Bank* v. *First Federal Savings & Loan Assn.,* 167 Conn. 294, 302, 355 A.2d 260.

The defendant's right to terminate depended on the language of the contract, the defendant's conduct, and the events existing at the time the letter was written. Hence, assuming arguendo that the defendant's loss of a prime tenant motivated him to cancel, he nonetheless had the right to terminate because he had used due diligence in an effort to obtain the building permit and he could not have obtained it before January 31, 1974. The defendant's conduct from the time he received a final executed contract from the plaintiff on January 16, 1974, effectively carried out his preliminary respon-

sibilities in seeking a building permit for the prospective commercial undertaking in the brief two week period he was given between the time the contract was executed and notice of termination was due. The defendant may have had two or more reasons for terminating the contract, but the contract provided that if he were unable to obtain a building permit by January 31, 1974, after exercising due diligence, he had the right to cancel. The nonoccurrence of a condition—in this case the obtaining of a building permit by January 31, 1974 —is not a breach of contract by a party unless he is under a duty that the condition occur. Restatement (Second), Contracts, Tent. Drafts Nos. 1–7, § 251. Under these facts, there was no obligation that the condition of obtaining a building permit occur.

The question thus remaining before this court is whether the letter of January 28, 1974, was sufficient notice under the contract to terminate that agreement. The plaintiff claims that the defendant's failure to mention the building permit in connection with the words "terminate the contract" when considered in conjunction with the defendant's language about loss of his prime tenant leaves the reason for termination ambiguous, and thus the defendant's letter of January 28, 1974, is insufficient to terminate the contract.[1] The plaintiff asserts that

---

[1] The defendant's letter of January 28, 1974, reads: "Please accept this letter as formal notification that we have been *unable to finalize our plans for the subject property and hereby officially terminate the contract I had with you for same.*

It is particularly unfortunate that we will not be able to put this project together. We are working with Continental Oil Company on a build-to-suit project and they had given us a letter of intent, together with every indication that they were going to locate through us on your property. After we have expended some

"[t]he letter . . . could be read as indicating termination for several reasons among which were loss of his tenant or the inability to obtain a permit."

In essence, the plaintiff is contending that under the contract there is only one proper reason for termination and the defendant's notification of termination must clearly state that reason. Previously we determined that the trial court's uncontroverted and unattacked conclusion that the defendant exercised due diligence in attempting to obtain the building permit and the finding's support of a conclusion that the building permit could not be obtained by January 31, 1974, substantiated that the defendant had the proper reason to terminate and established his right to terminate.

The defendant's letter of January 28, 1974, was sufficient notice under the contract to terminate the agreement. We agree with the plaintiff's claim that the letter could be read as indicating several reasons for termination including inability to obtain a permit. We disagree, however, with the plaintiff's conclusion that viewed in this light the letter

---

$2,000.00 in expenses, they have just notified us that they are locating in Woodbridge and will not give us the go ahead *to finalize plans for a building permit.*

There is not much more I can say about the aforementioned project. We will keep working on it and if your other plans do not work out, we will continue to try to sell it for you. In the meantime, upon my receipt of an acknowledgment of this letter from you, I would be more than willing to give you several sets of the engineering plans and data we accumulated for your property.

By copy of this letter, I am hereby requesting Attorney Zeisler *to release the $9,000.00 deposit* he is holding on your property *in accordance with the terms of the contract.*

Thank you for your fine cooperation and consideration. If you have any questions, please do not hesitate to call Alex Hall or me." (Emphasis added.)

does not constitute sufficient notice. The letter may have indicated several reasons for termination, but it was sufficient notice as long as it indicated the inability to obtain the building permit. This it did for in determining whether notice of termination of a contract is sufficient, the court should consider the entire communication. *Stovall* v. *Publishers Paper Co.*, 284 Or. 53, 584 P.2d 1375.

First, the letter expressly stated "we have been unable to finalize our plans for the subject property and hereby officially terminate the contract I had with you for same." This sentence alone fulfilled the requirement that notice of termination of a contract be sufficiently clear and unequivocal so as clearly to apprise the other party of the action being taken. *Atlantic Banana Co.* v. *Standard Fruit & Steamship Co.*, 493 F.2d 555 (5th Cir.); *Whitney Investment Co.* v. *Westview Development Co.*, 273 Cal. App. 2d 594, 78 Cal. Rptr. 302. By giving such clear notice of an official termination and employing the phrase "unable to finalize our plans for the subject property," the defendant, although inartfully drafting the letter in light of the words of the contract, certainly alerted the plaintiff that the contract's terms were being looked to and relied on. Second, the letter asserted that "[Continental Oil] . . . will not give us the go ahead to finalize plans for a building permit." The logical inference from this last assertion is that the defendant was unable to obtain a building permit because plans for the scope of what was to be built could not be completed. Third, the defendant's letter goes on to state "I am hereby requesting Attorney Zeisler to release the $9,000.00 deposit he is holding on your property in accordance with the terms of the contract." The reference to the terms of the contract

again provides the clear implication that the defendant was unable to obtain a building permit and that the terms of the contract were being complied with since the contract provided only that one ground for termination. Thus, taken as a whole, the defendant's letter contains sufficient language to notify the plaintiff of the defendant's inability to obtain a building permit. Hence, the court's conclusion that the defendant breached the contract must be stricken as unsupported by the facts or the law. See *Lonergan* v. *Connecticut,* 168 Conn. 122, 124, 357 A.2d 910; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500. We determine, as a matter of law, that the only proper conclusion from the facts found is that the defendant did not breach the contract he had entered into with the plaintiff. Practice Book, 1978, § 3039; Maltbie, Conn. App. Proc. § 165.

The plaintiff's cross appeal claiming that the trial court erred in determining that the plaintiff suffered no actual loss is premised on the court's conclusion that the defendant breached the contract because his letter of January 28, 1974, was insufficient to terminate the contract. Since we have determined that the letter of January 28, 1974, was sufficient to terminate the contract, our disposition of the defendant's appeal undermines the basis of the plaintiff's cross appeal.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.