[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, City of Waterbury (the City), appeals pursuant to General Statutes 4-183 (Rev'd to 1989) a decision of the defendant Connecticut State Board of Labor Relations (the Board) in which the Board ruled in favor of the defendant, Waterbury Police Local #1237 and Council #15, AFSCME, AFL-CIO (the Union).
Certain essential preliminary facts are not in dispute. On July 6, 1988, the Union filed a complaint pursuant to the Municipal Employee Relations Act, (the Act), General Statutes Chapter 113, 7-407 et seq., alleging that the City was engaged in practices prohibited by section 7-470. specifically, the Union claimed that the City had refused to comply with a settlement agreement (the Agreement) regarding the appointment and/or assignment of Union members to the Vice and Intelligence Division (the VI Division) of the City's Police Department. On April 14, 1989, the Union filed an amended complaint with the Board alleging that additional assignments made by the City were also in violation of the Agreement.
A hearing was held before the Board on November 13, 1989. The Board rendered a decision dated January 18, 1991 which was transmitted to the parties and received on or about January 22, 1991. It is this decision which the City appeals.
The history of events leading up to the Agreement which is the subject of this case is as follows: In June 1986, the City's Civil Service Commission voted that future appointments to the position of Detective within the Police Department would be made on the basis of a competitive examination. In November 1986, the Union filed complaints with the Board alleging that the City had violated the Act in the manner in which it had made some temporary assignments to the VI Division. In January 1987, an informal conference was held between the parties and the Board, and a tentative settlement was reached. This was eventually ratified in the form of the Agreement on February 4, 1987. The Agreement provides as follows:
 The Union will withdraw the Complaint on the condition that the City implements the following: CT Page 9779
 (a) If the three temporary Detective "slots" in the Vice and Intelligence Division are to be filled by Detectives who will be appointed on a permanent basis, then the City will appoint, in a timely fashion, the top three candidates from the detective examination list and will displace the incumbent temporary occupants to [sic] the three Detective "slots" if none of the incumbents is among the top three on the list. [It is the understanding of the undersigned that the oral portion of the Civil Service examination for detective (Plainclothesman) will be graded on the basis of a definite mark or grade to be awarded to the candidates who pass the written examination. Thus there will be a ranking of successful candidates for the eligibility list. It is our further understanding that if there is a written portion of the examination that it may be graded on a "pass-fail" basis; if there is to be a written portion, it will be administered prior to the oral portion].
 (b) If none or only one or only two of the "temporary" detective slots are to be made permanent, and if the City wishes to continue the temporary detective assignments, then it shall do so by making temporary appointments from the said detective (plainclothesman) eligibility list. (Emphasis in original).
Between October 21, 1987, and December 2, 1987, the City conducted an examination and compiled a list of candidates for Detective.
On June 6, 1988, the Department transferred Detective Edward Stephens from the Criminal Investigation Bureau to the VI Division. Stephens had placed 40th on the detective eligibility list. On April 3, 1989, the Department transferred Detectives James Egan and Francis Dabbo from the Criminal Investigation Bureau to the VI Division. Egan and Dabbo had placed 16th and 18th, respectively, on the detective eligibility list. None of these men is a member of a racial minority, nor is any member of a racial minority a party to this action. The significance of these facts will be discussed later. CT Page 9780
At the hearing before the Board, Superintendent Lamb testified for the City that the transfers of Stephens, Eagan and Dabbo were permanent assignments to the VI Division. He also testified that he did not follow the detective eligibility list in making these assignments but, rather, he followed a federal court order. This order, which the Board agreed to take judicial notice of, is set forth in Cicero Booker, Jr., et al. v. Waterbury Police Department, et al., Civil Action No. N-84-257 (D.Conn. 1985) (the Booker Order)). The Board found certain parts of the Booker Order pertinent to this action but did not find the order to be inconsistent with the agreement. Rather, the Board, in its final decision, concluded as follows:
 1. The refusal and failure to comply with a negotiated settlement of a prohibited practice case constitutes a violation of Section 7-470(a)(4) of the Act and a prohibited practice.
 2. The City's actions of appointing Officer Stephens on June 6, 1988, and Officers Egan and Dabbo on April 3, 1989, constituted a refusal and failure to comply with the negotiated settlement of prohibited practice . . . .
The Board ordered the City to appoint detectives to the VI Division in accordance with the Agreement and to pay them whatever salary differentials they would have earned had they been originally appointed to these positions. In addition, the Board found that the City's defenses were wholly frivolous and raised no debatable issue, and, therefore, ordered the City to pay the Union's expenses incurred in the investigation, preparation, presentation and conduct of the case.
Although the Municipal Employee Relations Act, General Statutes 7-471, also grants a right of judicial review of the Board's orders, this court has jurisdiction to hear appeals of such orders pursuant to General Statutes [4-183
(Rev'd to 1989). Council #4, AFSCME, AFL-CIO v. Connecticut State Board of Labor Relations, Superior Court, judicial district of Fairfield, Docket No. 114261 (February 14, 1980, Hull, J.); Local No. 1522, International Association of Firefighters v. State Board of Labor Relations, 31 Conn. Sup. 15
(1973).[1] The City has a specific, personal and legal interest in the subject matter of the Board's decision in that the decision involves the legal rights and obligations of the City under the Agreement and under the Act. The City's CT Page 9781 legal interest in the decision has been specially and injuriously affected in that the Board ruled against the City and in favor of the Union. Accordingly, the court finds that the City is aggrieved within the meaning of General Statutes 4-183 (Rev'd to 1989).
Essentially, the only issue in contention with respect to the alleged violation of the Agreement is whether it applies to permanent assignments to the VI Division. The Board found that it does so apply and that the failure of the City to choose the top three candidates from the examination list for the three permanent appointments constituted a violation. The City argues that the Agreement applies only to temporary appointments and that, therefore, the failure to comply with it in making permanent appointments did not violate it.
The City's arguments in support of its position that the Agreement covers only temporary appointments are the same ones that it made in defense of the complaint filed by the Union with the Board. They may be summarized as follows:
 (1) The disputes that originally led to the signing of the Agreement involved only temporary appointments.
 (2) The City was represented by highly competent counsel at the time it signed the Agreement, and it is unlikely that it would have given way on the subject of permanent appointments when that was not even in dispute.
 (3) The Agreement, if applied to permanent appointments, would conflict with the "rule" that only police officers who are already detectives are eligible for such appointments.
 (4) If applied to permanent appointments, the Agreement would conflict with the Booker order.
Familiar rules of contract interpretation dispose of arguments (1), (2), and (3), above. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Leonard Concrete Pipe Co. v. C. W. Blakeslee Sons, Inc., 178 Conn. 594 (1979). "When the plain meaning and intent of the language is clear, a clause in a written [contract] cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." Collins v. Sears, CT Page 9782 Roebuck Co., 164 Conn. 369, 373-74 (1973) (citations omitted); see also Powell v. Burke, 178 Conn. 384, 388 (1979) (citations omitted). In the instant case, the Board found, and the court agrees, that subparagraph (1) of the Agreement plainly and unambiguously provides a procedure to be followed whenever the City makes permanent appointments to the VI Division. If it does not apply to permanent appointments, it simply has no meaning at all. The City's evidence by which it attempted to show that the parties did not intend the Agreement to have that wide a scope is of no avail in the face of the plain words that they employed.
In reaching the conclusion that the specific language of the Agreement should control, the Board relied in part on the rule of Secondino v. New Haven Gas Co., 147 Conn. 672
(1960); and drew an unfavorable inference from the failure of the City to produce as a witness Attorney John Phelan, who represented the City during the settlement negotiations and who drafted the Agreement. The Board reasoned that Attorney Phelan would have been a natural witness to support the City's contention that the Agreement was never intended to apply to permanent appointments. The Secondino rule is that "[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." Id. 675. The City claims that the Board erred in drawing the unfavorable inference and that the error requires that the case be remanded. The City argues that Attorney Phelan was not a necessary witness because Superintendent Lamb testified as to the intention of the parties to the Agreement, as well as to other circumstances under which the Agreement was signed. In its brief, the City also argues that the Board did not make the mandatory finding that Attorney Phelan was available to testify.
The court agrees with the City that the Board was not entitled to draw the inference it did under the Secondino rule. Although Attorney Phelan was a witness whom the City would naturally have produced to support its position, there is no evidence in the record that he was available, nor does the Board's decision indicate any finding in that regard. The City had no burden of proof on the issue of availability; rather, the burden was on the Union to show that Attorney Phelan was available. Shelnitz v. Greenberg,200 Conn. 58, 75-76 (1986). In this case, the Board seems to have employed the Secondino rule sua sponte and without the necessary foundation.
The court's conclusion that the Board erred in applying CT Page 9783 the Secondino rule does not mean, however, that the Board's ultimate decision was so detective as to require a remand. The Board found that the language of the Agreement was clear and unambiguous. The court agrees. "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity . . . The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used." Zullo v. Smith,179 Conn. 596, 601 (1980). The Board inferred that Attorney Phelan's testimony would have negated the City's claims concerning the circumstances surrounding the adoption of the Agreement and the parties' intentions. But that inference was not at all necessary to support the Board's ultimate finding that the plain language of the Agreement extended to cover permanent appointments to the VI Division and that the City violated it. The Secondino argument in this case is a non-issue.
The City's final claim concerning the applicability of the Agreement to permanent appointments is that such an interpretation would bring the Agreement into conflict with the Booker order. The court disagrees. The Booker order incorporated an agreement between various plaintiffs and the Waterbury Police Department as to procedures for ensuring that members of racial minorities would have fair and equal access to special assignments within the Police Department. One of the special assignments covered by the order was the VI Division. As indicated in the Board's decision in this case, there are some sections of the Booker order which pertain to permanent appointments in the VI Division; in particular, there are provisions with respect to the posting of notices of vacancies and training opportunities. There is a provision requiring the City to "make every reasonable effort to maintain the percentage of minorities in . . . special assignments . . . at not less than the percentage of minorities among all sworn members of the Department." There is a provision requiring the City to "maintain a system pursuant to which sworn personnel shall have equal access to each special, temporary or emergency assignment . . . regardless of race or national origin." The Board found and the court, after careful examination of the Booker order, agrees that no provision of the Agreement concerning permanent appointments to the VI Division is in conflict with the Booker order. Furthermore, the City in its brief and oral argument has not pointed to any such conflict. Finally, Section II. 6. of the Booker order provides that "[t]he Waterbury Police Department and the Waterbury Superintendent of Police shall only be required to comply with the provisions of this [order] relating to special CT Page 9784 assignments if one or more minority police officer applies for any given special assignment, thereby making compliance possible." As indicated above, none of the officers whose appointment is in dispute is a member of a minority race. The Superintendent of the Police Department testified without contradiction that the racial composition of the VI Division at the time the disputed appointments were made did not require the appointment of a racial minority member under the terms of the Booker order. There was no evidence that any member of a racial minority applied for appointment to the VI Division, thereby triggering the provisions of the Booker order. Under these circumstances, the City's contention that provisions of the Booker order prevented it from complying with the Agreement cannot be sustained.
For all of the above reasons, the court concludes that the Board's decision finding the City in violation of the Agreement was correct. It follows that the Board was likewise correct in finding the City in violation of the Act, specifically General Statutes 7-470(a)(4) and 7-474(e) and (f). The remedy selected by the Board consisted of an order that the City (1) cease and desist from further violations of the Agreement; (2) make appointments to the VI Division in accordance with the Agreement; (3) "make whole those detectives who should have been appointed to the Vice and Intelligence Division;" (4) pay to the Union its costs and expenses incurred in the case, presumably including also those expenses incurred in defending this appeal.
The first three remedies are explicitly permitted by General Statutes 7-471(4)(B). The City's primary challenge is to that part of the order relating to the payment of the Union's expenses, (4) above. In its decision, the Board bases its order on its conclusion that the City's defenses were "wholly frivolous and raise no debatable issue" and on the broad remedial powers granted it by the Act. Thomaston Board of Education v. State Board of Labor Relations, 217 Conn. 110,128-129 (1991). While the court agrees that the Board has the power in some circumstances to order an employer to pay the costs of the union and/or the employees, including their legal fees, the stated basis of the order in this case does not accord with the facts. The City raised several defenses before the Board. These have been discussed at length in this decision. The fact that the court and the Board found the City's defenses to be inadequate does not mean that they were "wholly frivolous" and raised no "debatable issue." The interpretation of the Agreement and the related issues concerning the intentions of the parties constituted, at the least, "debatable issues." Similarly, the relationship between the Agreement and the Booker order raised a CT Page 9785 "debatable issue", even though the court and the Board ultimately found them to be not in conflict. Finally, it should be noted that prior to making the disputed appointments, the City obtained a legal opinion from its corporation counsel that the Agreement did not control the assignment of detectives to the VI Division. The opinion was signed by the corporation counsel and by the assistant corporation counsel. Under these circumstances, the court cannot conclude that the City's defenses to the Union's complaint were "wholly frivolous."
General Statutes 4-183(g) (Rev'd to 1989) provides, in relevant part, that "[t]he court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: ". . . (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." In this case, the court finds that the Board's order requiring the plaintiff City to pay all costs, including legal fees, incurred by the Union in this case, prejudiced substantial rights of the City. For the reasons set forth above, the court further finds that the Board's order constituted a "clearly unwarranted exercise of discretion." The Board's decision is, therefore, modified in accordance with section 4-183(g) (Rev'd to 1989) by deleting paragraph II.(c) thereof, which requires the City to pay the Union's costs and expenses. In all other respects the Board's decision is affirmed.
Maloney, J.