[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#116)
The plaintiff, Liane Lombardi, filed a four count complaint on December 18, 1991, against Marketing Corporation of American ("MCA") and Louis Alessio ("Alessio"). The plaintiff is seeking to recover money damages as a result of her alleged wrongful termination by MCA on June 10, 1991. The plaintiff claims that she was not terminated for poor job performance, but instead because she witnessed Alessio in intimate physical contact with a co-worker.
In the first count of the complaint, the plaintiff alleges that MCA breached its employment contract with the plaintiff. In the second count, the plaintiff alleges a claim of promissory estoppel against MCA. In the third count, the plaintiff alleges a claim of negligent misrepresentation against MCA. In the fourth and final count, the plaintiff alleges that Alessio tortiously interfered with her employment contract with MCA.
On October 1, 1993, the defendants filed a motion for summary judgment on the complaint on the ground that "all counts of the complaint fail as a matter of law." The defendants submitted a memorandum of law and seven exhibits in support of their motion for summary judgment. On November 23, 1993, the plaintiff filed an opposition to the defendants' motion for summary judgment and six exhibits.
A motion for summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there CT Page 5638 is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Connell v.Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990); Practice Book § 384. "The burden of establishing the absence of a genuine issue of fact and the entitlement of recovery as a matter of law lies with the moving party." Zapata v. Burns, 207 Conn. 496, 502,542 A.2d 700 (1988).
A) COUNT ONE: BREACH OF CONTRACT
MCA argues in their memorandum of law that as a matter of law, the court should grant summary judgment on count one of the complaint. MCA maintains that the plaintiff entered into an at-will employment agreement which expressly provided that the plaintiff could be terminated for any reason. See Exhibit A, Defendants' Motion For Summary Judgment. MCA submits an affidavit from Paul Robinson, president of MCA, who states that MCA discharged the plaintiff for poor work performance. See Exhibit D. Defendants, Motion For Summary Judgment. MCA also argues that because there is a disclaimer in the employee handbook, there is no implied contract arising out of terms of the employee handbook. Accordingly, MCA urges the court to grant its motion for summary judgment.
In response, the plaintiff admits that she signed an at-will employment agreement with MCA. Nevertheless, the plaintiff refers to paragraph 8 of the at-will employment agreement which states that "[the employee] hereby agree[s] to abide by all rules and regulations and directives issued by the company and to perform all duties required of [the plaintiff] by the company." The plaintiff claims that the handbook provides that "an employee is judged on the basis of quantity and quality of work performed, attitude, dependability, attendance, and punctuality." The plaintiff contends that there is a question of fact as to whether the at-will employment agreement incorporates by reference the above provision of the handbook. Based on this provision, the plaintiff argues that MCA breached this implied contract of employment by terminating the plaintiff for reasons other than her job performance. Accordingly, the plaintiff urges the court to deny the motion for summary judgment on count one.
In Connecticut, employment for an indefinite term is terminable by an employer at will unless the "former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public CT Page 5639 policy." Morris v. Hartford Courant Co., 200 Conn. 676, 679,513 A.2d 66 (1986); see Sheets v. Teddy's Frosted Foods, 179 Conn. 471,427 A.2d 385 (1980).
 [T]he public policy exception to the general rule of the employment at will doctrine is narrowly constructed to serve a limited purpose, namely, to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not.
Battista v. United Illuminating Co., 10 Conn. App. 486, 497,523 A.2d 1356 (1987).
In the present case, the plaintiff signed an at-will employment agreement which provides that MCA could discharge her for any reason. Therefore, MCA could terminate the plaintiff pursuant to the at-will employment agreement absent any violation of an important public policy.
The plaintiff claims that there is a question of fact as to whether the parties intended certain handbook provisions to be part of the employment contract.
With respect to this issue, the Supreme Court has stated that:
 [i]n determining the terms of a contract, the intentions of the parties, manifested by their words and actions, are essential. Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199, 520 A.2d 208 (1987) . . . . While we have recognized that, under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee; Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984); in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact.
Carbone v. Atlantic Richfield Co., 204 Conn. 460, 471,528 A.2d 1137 (1987).
"By eschewing language that could reasonably be construed as basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect CT Page 5640 themselves against employee contract claims based on statements made in personnel manuals." Finley v. Aetna Life Casualty Co., supra, 199, n. 5. Several superior court decisions have held that contract disclaimers contained within personnel manuals act so as not to create either express or implied contracts of employment. See Hood v. Mercedes-Benz Credit Corp., 4 Conn. L. Rptr. 680-81 (June 17, 1991, Lewis, J.) (The disclaimer was set out in a section entitled "Notice."); Grieco v. The Hartford Courant Co.,8 CSCR 219-20, (January 27, 1993, Aurigemma, J.) (The disclaimer was on the first page of the handbook.); Lawrence v. Summit Corp.of America, 8 CSCR 402-03, (March 22, 1993, Sullivan, J.) (The contractual disclaimer was printed in boldface type).
The disclaimer in the employee handbook provides as follows:
 "The language used in this information booklet is not intended to create nor is to be construed to constitute an express or implied contract between MCA and any or all of its employees."
The disclaimer contains definitive contractual language that the provisions in the employee handbook are not contractual provisions. The disclaimer appears on the second page of the handbook in normal typeface. The plaintiff even submitted a handbook receipt where she acknowledges reading the handbook. See Exhibit D, Plaintiff's Opposition to Defendants, Motion For Summary Judgment. Therefore, based on the disclaimer, MCA protected itself from any claims of contract based on the employee handbook. SeeFinley v. Aetna Life Casualty Co., supra, 199 n. 4.
"Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers." Randolph Construction Co. v. Kings EastCorporation, 165 Conn. 269, 275, 334 A.2d 464 (1973). "Where . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." Batter Building Materials Co. v. Kirschner,142 Conn. 1, 7, 110 A.2d 464 (1954). "In the absence of an express provision, incorporated documents may neither expand nor restrict the obligations of the parties under the basic contract." RandolphConstruction Co. v. Kings East Corporation, supra, 275.
In the present case, the at-will agreement does not expressly CT Page 5641 provide that the terms of the employee handbook are to be incorporated as part of the plaintiff's employment agreement. In fact, the at-will agreement contains an integration clause which provides that any modifications to the contract must be in writing and signed by the parties. See Exhibit A, Defendants' Motion For Summary Judgment. The employee handbook contains a disclaimer which shows that the parties did not intend for the terms of the employee handbook to create, or to be construed to constitute, an express or implied contract between the plaintiff and MCA. Therefore, the plaintiff's at-will agreement does not incorporate by reference the terms of the employee handbook.
The plaintiff was an at-will employee and the public policy exception is inapplicable. Based on the foregoing, summary judgment should be granted in favor of MCA as to count one of the complaint.
COUNT TWO: PROMISSORY ESTOPPEL
MCA argues that count two must fail as a matter of law on the basis that the plaintiff is precluded from asserting a claim of promissory estoppel when a written employment agreement exists. Also, MCA argues that the plaintiff has alleged no clear and definite promise on which she could reasonably rely in support of her claim of promissory estoppel.
In response, the plaintiff maintains that she relied to her detriment on MCA's promise in the handbook to judge an employee's performance based on the quality of the work performance. The plaintiff also states that her supervisor told her while she was working "not to change anything about her performance because it was valuable to MCA." The plaintiff argues that there is a question of fact as to whether she reasonably relied on promises made by MCA. Also, she argues that there is an issue of material fact as to whether the at-will employment agreement is a fully integrated contract and whether the parol evidence rule bars admission of these oral representations made by MCA. Therefore, the plaintiff urges the court to deny summary judgment on count two.
Restatement (Second) 90 defines promissory estoppel as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance. . . . [I]t is binding if injustice can be avoided only by enforcement of the promise." CT Page 5642
 A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.
D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 213, 520 A.2d 217 (1987); see Manning v. Cigna Corp., 807 Supp. 889 (D.Conn. 1991) (the court granted summary judgment on count of promissory estoppel where employer's oral promises of "continuous and secure employment: and a probationary period prior to discharge were insufficiently definite and promissory to form the basis of a promissory estoppel claim.); Dacourt Group, Inc. v.Babcock Industries. Inc., 747 F. Sup. 157 (D.Conn. 1990) (the court granted summary judgment on claim of promissory estoppel where representations were not "clear and unambiguous promises" sufficient to support a claim for promissory estoppel.); Yost v.Ex-Cello Corp., 18 Conn. Law Trib. No. 2, p. 2 (Super.Ct., January 13, 1992, Carbranes, J.) (the court granted summary judgment on a count of promissory estoppel where "any reliance by the plaintiff on his supervisor's alleged oral statement that he would be covered by the employee handbook was unreasonable since the handbook stated explicitly that it was applicable to hourly workers only.")
MCA's alleged representations were neither sufficiently promissory nor sufficiently definite to support contractual liability based on a theory of promissory estoppel. The plaintiff alleges in count two that she relied on statements in the handbook that MCA would evaluate her on the basis of her job performance. In light of the written, at-will employment agreement and the disclaimer in the employee handbook, MCA's representations in the handbook are not clear and definite promises that the plaintiff could have reasonably relied on to govern the terms of her employment.
Moreover, "[i]t is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Citations omitted.) Zullo v. Smith, 179 Conn. 596,601, 427 A.2d 409 (1980). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Leonard Concrete Pipe Co. v. C.W. Blakeslee Sons,Inc., 178 Conn. 594, 598, 424 A.2d 277 (1979). CT Page 5643
 An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract. When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract. (Citations omitted.) An untenable situation would result if notwithstanding the existence of a written, enforceable contract, a party could sue for promissory estoppel based on contradictory promises that it allegedly relied on.
NCC Sunday Inserts, Inc. v. World Color Press, Inc., 759 F. Sup. 1004
(S.D.N.Y. 1991); see McLean v. Derby Savings Bank, 8 CSCR 728
(June 11, 1993, Jones, J.) (in a wrongful discharge action, the court granted summary judgment on counts of breach of contract and promissory estoppel where the plaintiff was an at-will employee and the employee manual contained a disclaimer.)
The parties entered into a written at-will employment agreement. Both parties agree that the at-will employment agreement is valid. The plaintiff cannot assert a claim for promissory estoppel when a valid, written at-will employment agreement exists. Based on the foregoing, the court grants summary judgment in favor of MCA on count two of the complaint.
COUNT THREE: NEGLIGENT MISREPRESENTATION
In order to sustain a cause of action for negligent misrepresentation, MCA argues that the plaintiff must prove that her reliance on the alleged statement by MCA that she would be evaluated on the basis of her job performance was justifiable and that the statement itself was false. Restatement (Second) of Torts, § 552. MCA argues that absent any evidence of false and misleading statements regarding the plaintiff's employment, they are entitled to summary judgment on the count of negligent misrepresentation, citing Mason v. Burkett, 756 F. Sup. 679, 682
(D.Conn. 1991).
In opposition, the plaintiff claims that MCA's representations that she would be evaluated on the basis of her work were false and misleading. The plaintiff argues that there is a genuine issue of material fact as to whether the plaintiff's reliance on MCA's representations was reasonable. The plaintiff further submits that there is a question of fact as to whether her dismissal based on CT Page 5644 poor work performance was merely a pretext for her discharge. As a result, the plaintiff urges the court to deny the motion for summary judgment.
The Restatement (Second) of Torts 552 provides:
 One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
D'Ulisse-Cupo v. Directors of Notre Dame High School, supra, 217; see Mason v. Burkett, supra, 682 (absent any evidence of misrepresentation, the court found that the defendant was entitled to summary judgment as a matter of law on the plaintiff's claim of negligent misrepresentation.); see Dacourt Group, Inc. v. BabcockIndustries, Inc., supra, 161 (the court granted summary judgment on the claim of negligent misrepresentation where the plaintiff failed to submit any evidence that the defendant knew or had reason to believe that the representations were false.); Manning v. CignaCorp., supra, 897 (the court granted summary judgment on a count of negligent misrepresentation where employee handbook had disclaimer and the plaintiff could not refer to any written policies guaranteeing termination only for failure to meet the job requirements.). But see Relva v. Allied Grocers Co-op, Inc.,7 CSCR 1133 (September 3, 1992, Aurigemma, J.) (the court held that issue of negligent misrepresentation was a question of fact where the plaintiff never received the handbook containing the disclaimer.)
In the present case, the plaintiff has not offered any evidence that MCA supplied false information or negligently misrepresented the terms of the plaintiff's employment. The plaintiff had a clear understanding of the terms of her employment when she entered into the at-will employment agreement. The plaintiff has acknowledged reading the handbook which includes the disclaimer. See Exhibit D, Plaintiff's Opposition to Defendants' Motion For Summary Judgment. Further, the plaintiff cannot refer CT Page 5645 to any other written policies guaranteeing that she would be evaluated solely on the basis of her job performance. Accordingly, the court grants summary judgment in favor of the defendants on count three of the complaint.
COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
Alessio moves for summary judgment on count four of the complaint. In court four, the plaintiff alleges that Alessio instigated MCA's breach of its contract after the plaintiff witnessed his illicit conduct. Alessio claims that there are no facts to support the plaintiff's claim of tortious interference. Alessio had nothing to do with the plaintiff's discharge as it was based on a collective decision by the partners of the firm. See Exhibit D, Defendants' Motion For Summary Judgment.
In response, the plaintiff argues that there is question of fact as to whether Alessio tortiously interfered with her employment relationship with MCA. Specifically, the plaintiff states in her affidavit that after she observed Alessio with another co-worker, Alessio allegedly called a meeting with several supervisors to discuss the plaintiff's job performance. See Exhibit E, Plaintiff's opposition To The Defendants' Motion For Summary Judgment. The plaintiff claims that shortly thereafter, MC terminated her employment. The plaintiff insists that the court cannot resolve this issue on summary judgment because there are issues of fact as to whether Alessio interfered with MCA's decision to terminate the plaintiff.
"The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." Hart, Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619, 629,548 A.2d 758 (1988). "[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . `[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.'" (Citations omitted.) Robert S. Weiss Associates, Inc.v. Weiderlight, 208 Conn. 525, 536, 546 A.2d 216 (1988). "This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Citations omitted. Blake v. Levy,191 Conn. 257, 261, 464 A.2d 52 (1983). Under the doctrine of CT Page 5646 tortious interference, ". . . whether a defendant acted maliciously or not is a question of intent which is a question of fact."Arzonetti v. Bank of Boston, Superior Court, judicial district of Litchfield, Docket No. 005761 (June 24, 1993); see Quimby v.Kimberly Clark Corp., 28 Conn. App. 660, 667, 613 A.2d 838 (1992).
There are genuine issues of material fact as to whether Alessio tortiously interfered with the plaintiff's employment. There are conflicting affidavits from the parties as to whether Alessio was involved with MCA's decision to terminate the plaintiff's employment. Accordingly, the court denies summary judgment on count four.
MORAN, J.