[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff comes before the court seeking a return of a real estate deposit. The defendant refuses to return the deposit denying the plaintiff's allegations and claims further that the plaintiff has failed to carry out the terms of the agreement and seeks further damages by way of a counterclaim.
On March 15, 1996, the parties executed a binder agreement for the purchase and sale of the subject property located at 495 Ward Street Extension in the Town of Wallingford and consisting of some 14.6± acres. The Binder contained a contingency for zoning approval seeking a zone change from an R11 zone to an R6 zone both of which are residential types of zones.
A contract was entered into between the parties for the purchase and sale of said property on May 14, 1996. On the same date an addendum to the contract was also executed. The Contract itself contained no provision for a change of zone however the addendum contained the following (Exhibit A, paragraph 5):

CT Page 12491 "Purchaser will apply for a zone change within 60 days of execution of agreement. Failure to apply will be a default by the Purchaser under agreement."
An application for a zone change was filed on June 7, 1996 (Exhibit B) seeking a change of zone from R11 to R6 and approval for 60 lots.
A hearing was held on July 8, 1996 and on July 12, 1996 the plaintiff was notified that the application for zone change had been denied.
It should be noted at this time that while the binder agreement made the granting of a zone change a condition precedent, this provision was eliminated from the contract, (Exhibit 1). The provision in the addendum (Exhibit 1) did not make the granting of a zone change a necessary condition. It only required the filing of a petition for a change of zone.
The contract, (Exhibit 1), contained the following provision:
 "#7i On or before the sixtieth day following the date first above written . . ., Purchaser at it's own expense may inspect the physical condition of the property (which inspection may include but shall not be limited to an environmental site assessment as to the property) which inspection shall be satisfactory to Purchaser in its sole discretion. If Purchaser is dissatisfied with any such inspection for any reason, Purchaser may terminate this agreement by written notice to the Seller within the inspection period." (Emphasis added).
Paragraph 15 of the Contract is entitled "Entire agreement" and in its pertinent part contains the following:
 "This agreement contains the entire agreement between the parties hereto and is intended to be an incorporation of all prior or contemporaneous agreements, conditions or undertakings between the parties hereto. There are no promises, agreements, conditions, undertakings, warranties or representations, oral or written, express or implied, between and among the parties hereto other than as herein set forth . . ."
The site itself is a former industrial site and at the time CT Page 12492 the contact was entered into only a small portion of it was being used by a plastics manufacturer. At one time, a fireworks manufacturer occupied the site. During that interval an explosion and ensuing fire destroyed a substantial portion of the same. Because of its use and the explosion and fire, a concern was expressed regarding the environmental soundness of the property. The real estate broker, Kovalski Realtors, indicated that there had been some contamination but that it had been cleaned up.
Having knowledge of the pre-existing problems, the purchaser being concerned for the condition of the property from an environmental point of view, commissioned a Phase 1 Environmental Study. They engaged the services of Marin Environmental Inc., a consulting firm, to perform this study. Marin was contacted on May 14, 1996 and asked to do a Phase 1 site effects study. This they began on May 15, 1996 and completed the same by the end of May. The study itself discloses that the authorization to proceed with the study was received on May 17, 1996 and completed on May 24, 1996. The report itself is dated "May 1996". The study, while it did not identify any specific points of contamination, did however discover several areas of concern and recommended a Phase 2 study.
On June 3, 1996, a letter was sent from Dana Freedman, counsel for the plaintiff to Donald Lunt, counsel for the defendant, as well as a party in interest, requesting all site assessment reports previously taken and in possession of the defendants. Reference is made to the plaintiff's Phase 1 site assessment raising several concerns and its recommendation for further testing. (Exhibit 6). The defendant's counsel responded by letter dated June 4, 1996 enclosing the materials requested, (Exhibit 5).
Marin Environmental received these reports from Attorney Freedman at the end of the first week in June requesting their review. In this regard, they spoke with Attorney Freedman during the second week of June. They disclosed that a reasonable time to conduct a Phase 2 analysis would take 60 days. Marin testified that the old reports would not help since they were not based on present day standards. A substantial revision had been made in the environmental regulations in the interim.
He was asked to initiate a Phase 2 study on July 8, 1996 but this requisition was canceled approximately two days later. CT Page 12493
In addition, the plaintiff on June 7, 1996 made application for a zone change, referred to in the addendum. (Exhibit 1). The Hearing thereon was held on July 8, 1996 and on July 12, 1996 notice was given of the denial of said application. (Exhibit C).
Subsequent to the zone change denial a meeting was held between the parties. Said meeting was called by the defendant to express their concern over existing conditions. The testimony of the respective parties differs some as to what actually occurred at this meeting. The defendant Lunt testified that the plaintiff was merely concerned over the zoning denial and requested an extension of time which was refused. He claims that the plaintiff did not discuss the environmental issue. The plaintiff contends that as far as the zoning denial he was not concerned since there were alternatives that could be employed. The plaintiff an experienced real estate developer knew that there was no basis for terminating the contract based on any zoning denial since pursuant to the terms of the addendum a zoning approval was not a condition precedent.
While there may have been some discussion of zoning at that meeting, it is more likely than not that the plaintiff was concerned over the possible contamination of the site and when the defendant refused to make any concession relating to the contract he exercised his right pursuant to Section 7(i) of the contract.
There is sufficient evidence before the court to conclude that the plaintiff's concern was environmental in nature. The Phase 1 study sets forth several suspicious areas of possible contamination on the site. A Phase 2 study was commissioned and then canceled subsequent to which a meeting of the parties was held. Since the 60-day time frame was running out, it is logical to conclude that the defendant was looking for concessions from the plaintiff or at least an extension of time. When this was not forthcoming, they exercised their right under the contract that if dissatisfied for "any reason" they may terminate this agreement, with "notice to the seller within the inspection period." (Exhibit 1, Section 7(i).
The defendant raises the issue that the so-called termination letter or letters, does not expressly terminate the contract. On July 12, 1996, a letter was dispatched from the plaintiff's Attorney (Plaintiff's Exhibit 2) to Attorney Lunt indicating the following: CT Page 12494
 "In accordance with the provision of Paragraph 7(i) of that purchase and sale agreement . . . notice is hereby given of the Purchaser's dissatisfaction with its inspections of the property and demand is hereby made for immediate return of the $10,000.00 deposit together with all interest accrued thereon."
A follow up letter was sent the same date correcting the amount of the deposit to $20,000.00.
The letter requesting the return of the deposit due to the plaintiff's dissatisfaction with its inspections, "fulfilled the requirement that notice of termination of a contract be sufficiently clear and unequivocal so as clearly to apprize the other party of the action being taken." (Internal citations omitted). Zullo v. Smith, 179 Conn. 596, 604. The plaintiff has clearly noted its dissatisfaction with its inspections. That coupled with the request for the return of the deposit, clearly expresses their decision to terminate the contract. In addition, Section 7(i) of the contract indicates that the dissatisfaction with any such inspection may be for any reason. The termination notice is sufficiently clear and unequivocal. (emphasis added).
The plaintiff's second count constitutes a claim for unjust enrichment. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract,"2 Conn. App. 265, A. C. Corporation v. Pernasilci,et al, "An allegation of a contract enforceable at law would of course preclude the equitable remedy of unjust enrichment"U.S. Fidelity and Guarantee Co. v. Metropolitan Property andLiability Insurance Co., 10 Conn. App. 125,127 (Internal citations omitted).
In view of the courts finding on the first count, it finds that any claim for unjust enrichment is not applicable.
Plaintiffs' Third Count claims a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The Unfair Trade Practices Act, § 42-110b(a) prohibits anyone engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. Section 42-110(b) requires that the courts of this State in interpreting subsection (a) are to be guided by the Federal Trade Commission and the Federal Courts. CT Page 12495
In determining whether an act constitutes an unfair trade practice or an act violating public policy, our Supreme Court has adopted the so called "cigarette rule" as employed by the Federal Trade Commission. This rule is a three-prong rule the first being whether the act or practice constitutes an offense against public policy as established under the common law, statutes or concepts of unfairness. The second prong is whether the act is immoral, oppressive or unscrupulous. Finally, the third prong must determine whether the act causes substantial injury to consumers.Williams Ford Inc. v. Hartford Cement Co., 232 Conn. 559, 591
(1995). It is not necessary that all three prongs be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one criteria or because to a lesser degree it meets all three. Associated Investment Co. Ltd.Partnership v. Williams Associates IV, 230 Conn. 148, 156 (1994). The plaintiff for his CUTPA claim relies on the fact that the defendant refused to return the deposit after being informed of the plaintiff's dissatisfaction with the environmental inspection coupled with the fact that on previous occasions the defendant did not return a deposit. There is insufficient evidence for the court to find a CUTPA violation and therefore rules for the defendant on this count.
The defendant has filed a counterclaim lying in two counts. The first count is based upon a claim of fraud in the inducement relative to the contract entered into. This claim the court finds to be without merit. In order to prevail the defendant must show that the statement was untrue and known to be untrue. That the statement although false was made as a statement of fact, that the statement was made to induce the other party to act and that he in fact acted on the statement to his detriment. Darsey v.Mancuso, 23 Conn. App. 629, 633 (1990).
The basis for the plaintiff's claim was that in pre-contractual negotiations, the plaintiff had agreed that zoning approval would not be a prerequisite and that only environmental concerns would be a basis for withdrawing when in fact the real basis for the plaintiff's actions was the denial of zoning approval.
It should be noted that the contract clearly speaks for itself. Zoning approval was not a condition precedent and the evidence is clear that the withdrawal from the contract was due to environmental concerns. CT Page 12496
The burden of proof in such circumstances is by clear and satisfactory or clear, precise and unequivocal evidence. Millerv. Appleby, 183 Conn. 51, 55 (1981); Kilduff v. Adams, Inc.,219 Conn. 314, 328 (1991). The defendant has not sustained this burden.
The defendant claims in the second count of his counterclaim that in terminating the contract the plaintiff violated the implied covenant of good faith and fair dealing and bases this claim on the finding in the case of Warner v. Conover,210 Conn. 159 (1989). In that case, a landlord and tenant matter, the defendant claimed that since there was no clause in the lease whereby the landlord would not unreasonably withhold any approval of the assignment of the lease, they had an unfettered right to withhold any consent. In the case before the court, however, the contract permitted the plaintiff, following an inspection of the property, to terminate the contract if dissatisfied for any reason. There is ample evidence in the record showing a concern for the environmental condition of the property so as to allow the plaintiff to exercise its discretion and terminate the contract.
The defendant owner claims a lack of good faith in what is claimed to be an excessive delay in informing them of their environmental concerns. All of the plaintiff's decisions were made within the time frame expressed in the contract. The time from the Phase 1 report to termination of the contract can hardly be deemed to be excessive. The plaintiff certainly had the right to meet and strategize with his associates and when the defendant refused any extension, exercise his right under the contract to terminate.
Judgment may enter for the plaintiff to recover his deposit in the amount of $20,000.00 with interest at the rate of ten (10) percent per annum.
THE COURT
CURRAN, J.