## THE FLETCHER-TERRY COMPANY v. EUGENE W. GRZEIKA
### (2297)

TESTO, HULL and DUPONT, Js.

Argued December 1, 1983—decision released March 20, 1984

*Sherwood L. Anderson III,* for the appellant (plaintiff).

*Alfred F. Morrocco, Jr.,* with whom, on the brief, was *David R. Sirois,* for the appellee (defendant).

HULL, J. This is an action to enforce a provision of an assignment contract wherein the defendant, Eugene Grzeika, was allegedly obligated to cede his patent and title rights to his invention of an improved glazier's tool over to the plaintiff, the Fletcher-Terry Company (Fletcher), his employer. The trial court declined to consider the issues relating to title to the invention and the enforceability of the contract provision pending a decision by the United States patent authorities concerning patent rights to the invention. The trial court, however, granted the defendant's request that the plaintiff pay all of the defendant's patent related expenses pursuant to another provision of the contract. The plaintiff appealed.[1]

The plaintiff, Fletcher, manufactures and sells glass cutting equipment and a variety of glazier's tools. The defendant was employed by Fletcher from October of 1958 until he voluntarily left the company in April of 1978. In 1970, the plaintiff adopted a company policy whereby certain employees were required to sign an "Employee Invention and Confidential Information Agreement" (agreement). By signing the agreement, an employee transferred to the plaintiff "[a]ll new contributions, suggestions or inventions conceived or made" by the employee relative to the plaintiff's business while working for the plaintiff.[2] The defendant

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] Paragraph two of the "Employee Invention and Confidential Information Agreement" provides in full: "All new contributions, suggestions or inventions conceived or made by me during my employment by the Company shall belong to the Company, provided such contributions, suggestions or inventions grow out of my work or are related or pertain to the

signed this agreement in 1970 as, at that time, his position with the company brought him within the category of employees required to sign the agreement.

Early in 1977, the defendant invented a new type of magazine for a point driver, a type of hand tool used by the plaintiff. The plaintiff submitted a joint application to the United States Patent Office, naming the defendant and another employee, who had allegedly improved upon the defendant's concept, as joint inventors. The defendant refused to sign the application or to assign any rights to the plaintiff, while the other inventor complied with the terms of the agreement. The defendant then filed a patent application solely in his name after consulting with a privately retained patent attorney.[3] The United States Patent Office then ordered an interference proceeding.[4]

The plaintiff brought this suit alleging that the defendant had breached the agreement and requesting the court (1) to declare the plaintiff the owner of the invention; (2) to compel the defendant to transfer ownership of the invention to the plaintiff; or (3) to issue a temporary or permanent injunction restraining the

---

business of the Company. I shall: (a) promptly disclose to the Company all such contributions, suggestions and inventions; (b) at its request, assign to the Company the entire rights to the new contribution, suggestions and invention for the United States and all foreign countries, and sign all papers necessary to effect the assignment; (c) assist the Company in every proper way to obtain for its benefit patents for such inventions in any and all countries; (d) maintain adequate written records of all contributions, suggestions and inventions, which records shall remain the property of the Company."

[3] Upon receiving return notice from the United States Patent Office regarding the joint application for a patent, the defendant met with the plaintiff's patent attorney who advised him that he should obtain his own attorney.

[4] "An interference is an administrative proceeding initiated by the Commissioner of Patents pursuant to 35 U.S.C. § 135 for the purpose of determining the question of priority of invention between two or more parties claiming substantially the same patentable invention." 60 Am. Jur. 2d, Patents § 239.

defendant from assigning, transferring or abandoning his rights in the invention to anyone other than the plaintiff. A temporary injunction was issued by the trial court, *Wright, J.,* on September 12, 1980, and a full hearing was subsequently held from April 13 through 15, 1981. On October 9, 1981, the court, *Hon. John P. Cotter,* state referee, adopted in full the prior decision of the court rendered on September 12, 1980, and granted a permanent injunction as requested by the plaintiff.[5] The plaintiff's prayer for relief relating to a declaration of the plaintiff's ownership and the transfer of ownership to the plaintiff were left undecided; the court preferring to await the decision of the Patent Office before proceeding with the question of ownership. The injunction included an order for Fletcher to pay for all of the defendant's expenses incurred relative to settling his rights concerning the invention in question. The court found that the plaintiff was obligated to pay these expenses pursuant to paragraph three of the employee invention agreement.[6]

The issues on appeal are: (1) whether the trial court had jurisdiction to determine the question of title to the defendant's invention; (2) whether the trial court found the agreement valid and binding, in that the court ordered the plaintiff to pay the defendant's legal and other expenses pursuant to a provision of the agree-

---

[5] The permanent injunction stated: "The defendant is restrained 1. from assigning or otherwise transferring his rights to or ownership in the foregoing so-called invention or the above described patent applications. 2. He is also restrained from abandoning the above described so called invention or the patent applications likewise specified above. 3. The Fletcher-Terry Company is ordered to pay the defendant all expenses which he has incurred and may lawfully incur in accordance with the terms of the 'Employee Invention And Confidential Information Agreement' as stated in paragraph three which provides in part: 'The Company shall pay all expenses incurred in the obtaining or preservation of patents (or other legal protection) in connection with such inventions, suggestions or contributions.' " (Emphasis omitted.)

[6] See footnote 5, supra.

ment; and (3) whether the terms of the agreement require the plaintiff, under the circumstances of the present case, to pay all of the defendant's expenses incurred relative to preserving his rights in connection with the invention.

Interference proceedings relative to the rights to a patent on the defendant's invention are merely collateral to the main issue in this case, which is whether or not Fletcher, under contract law, is entitled to all or the "entire rights" to the defendant's invention, thus including title, ownership, patent or any other rights concommitant with the invention. Thus, the enforceability of the contract is the primary issue.

State contract law is not preempted by federal law merely because intellectual property is in issue. See *Aronson* v. *Quick Point Pencil Co.,* 440 U.S. 257, 262, 99 S. Ct. 1096, 59 L. Ed. 2d 296 (1979). There is a distinct division of jurisdiction between state and federal courts in matters pertaining to patents. See *New Marshall Engine Co.* v. *Marshall Engine Co.,* 223 U.S. 473, 476, 32 S. Ct. 238, 56 L. Ed. 513 (1912); *Pratt* v. *Paris Gas Light & Coke Co.,* 168 U.S. 255, 259–60, 18 S. Ct. 62, 42 L. Ed. 458 (1897); *Marks* v. *Neufeld,* 81 F. Sup. 847 (S.D. Iowa 1948); see generally 35 U.S.C. § 1 and §§ 100 through 154. " 'Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject matter of the controversy.' *New Marshall Engine Co.* v. *Marshall Engine Co.,* 223 U.S. 473, 478, 32 S. Ct. 238, 56 L. Ed. 513 [1912]; see also *Lear, Inc.* v. *Adkins,* 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610 [1969]; *American Well Works* v. *Layne & Bowler Co.,* 241 U.S. 257, 259, 36 S. Ct. 585, 60 L. Ed. 987 [1916]; *Pratt* v. *Paris Gaslight & Coke Co.,* 168 U.S. 255, 259, 18 S. Ct. 62, 42 L. Ed. 458 [1897]; *Transparent Ruler Co.* v. *C-Thru Ruler Co.,* 129 Conn. 369, 373, 28 A.2d 232 [1942]; Chisum, 'The Allocation of

Jurisdiction Between State and Federal Courts in Patent Litigation,' 46 Wash. L. Rev. 633 [1971]; note, 72 Harv. L. Rev. 328; note, 70 Harv. L. Rev. 509; 2 Nims, Unfair Competition and Trade-Marks § 363." *Plastic & Metal Fabricators, Inc.* v. *Roy,* 163 Conn. 257, 267, 303 A.2d 725 (1972). "[C]ourts of a state may try questions of title, and may construe and enforce contracts relating to patents. *Wade* v. *Lawder,* 165 U.S. 624, 627 [17 S. Ct. 425, 165 L. Ed. 851 (1897)]." *New Marshall Engine Co.* v. *Marshall Engine Co.,* supra, 478.

The "Employee Invention And Confidential Information Agreement" in the present case is an assignment contract which seeks to compel the signing employee to "assign to the company the *entire rights* to the new contribution, suggestions and invention . . . ." (Emphasis added.). The trial court found that it had "no basis or authority . . . upon which to support a determination of whether the defendant was the sole or joint owner of the invention in question." The plaintiff distinguishes the court's jurisdiction to determine ownership from the authority to determine who was the inventor. The plaintiff, in its brief to the trial court, conceded that "the question whether the defendant alone, or jointly . . . is entitled to be named as the 'inventor' of the patent or patents described in the applications is solely under the jurisdiction of the Patent and Trademark Office, United States Code, Title 35; U.S. Constitution, Art. 1, Section 8." It is clear that the plaintiff seeks enforcement of the contract and not a determination of who was the "inventor." By seeking enforcement of the contract, the plaintiff seeks to compel the defendant to "assist the Company in every proper way to obtain for its benefit patents for such inventions" and to assign his entire rights, vested or not, to the plaintiff.

A patent is considered personal property, the situs of which follows the person who is the owner. See 35

U.S.C. § 261; *De La Vergne Refrigerating Machine Co.* v. *Featherstone,* 147 U.S. 209, 215–16, 13 S. Ct. 283, 37 L. Ed. 138 (1893). Thus, there is no property right in the patent itself until the patent is issued. In this case, because a patent had not yet been granted, as a decision following the interference proceedings had not yet been rendered, there was no property interest in a patent and therefore no justiciable issue concerning title to the patent itself. In its memorandum of decision, the trial court stated that "[a]t this juncture most of the relief sought by the plaintiff appears inappropriate. Until the proceedings in the Patent Office are terminated, the role of this court should be to await the decision of the Patent Office."

It was unnecessary for the court to take this approach. The plaintiff was, of course, interested in who would eventually obtain the patent rights *when issued,* but the plaintiff's main concern, and thus the main issue to be addressed, was whether or not the assignment contract was enforceable. If the contract is enforceable, the plaintiff claims that it would be entitled to ownership rights in the invention and patent rights or title to the patent when and if a patent is granted.

The courts of this state have determined that an agreement to assign an invention and patent rights is a proper subject for specific performance. *New Haven Sand Blast Co.* v. *Dreisbach,* 102 Conn. 169, 191, 128 A. 320 (1925); *Superior Electric Co.* v. *Burski,* 24 Conn. Sup. 446, 451, 193 A.2d 898 (1963). It is recognized, therefore, that the enforcement of an invention assignment contract is properly within the jurisdiction of the Superior Court.

In *Transparent Ruler Co.* v. *C-Thru Ruler Co.,* 129 Conn. 369, 372, 28 A.2d 232 (1942), where the defendant unlawfully misappropriated an invention from the plaintiff who was the original inventor, and applied for

and received a patent, the court briefly and without citing authority undertook to determine the ownership of the patent. The court held that the plaintiff was the rightful owner and stated that the defendant " 'did not invent' the patent. Assuming that she did, it was the ownership of the patent which is here involved, not who invented it." The court further stated, "[t]he defendant . . . is clothed with the indicia of title to a patent issued by the United States Patent Office; the patent is valid on its face; [the defendant] is not its rightful owner. The court has the power to compel her to assign it to its real owners, found by it to be the plaintiffs." Id., 373. This case illustrates that in Connecticut, the courts recognize that the issuance of a patent and rights to ownership are separate albeit related issues.[7] Although the issuance of the patent may be evidence as to who is the inventor or owner of an invention, pursuant to the analyses above, the outcome of an interference proceeding and the granting of a patent are not determinations that are prerequisite to a decision concerning ownership or the enforceability of an assignment contract.

In *Plastic & Metal Fabricators, Inc.* v. *Roy,* 163 Conn. 257, 303 A.2d 725 (1972), the plaintiff, an inventor, had an agreement with the defendant whereby the defendant would act as a consultant in connection with pollution control devices. Pursuant to the agreement, the plaintiff disclosed his new process for removing metal contaminates from waste water to the defendant in confidence. The Supreme Court had jurisdiction over the matter. The court stated: "It is clear that the plaintiff's cause of action is for a wrongful breach of a confidential relationship, a matter independent of the

---

[7] Priority or first inventorship, thus pertaining to who is the inventor, is a matter to be decided by the Patent and Trademark Office pursuant to 35 U.S.C. § 135. A suit for unlawful or fraudulent misappropriation of an invention by making a patent application should, however, be brought in state court. See 60 Am. Jur. 2d, Patents § 241.

patent laws." Id., 273. "The fact that a patent application has been filed by the defendant does not remove from the state court jurisdiction to enjoin a breach of a confidential relationship . . . ." Id. The court concluded that "enforcement by the state of the inventor's recognized right to secrecy . . . presents no conflicts with the two principal objectives of the patent law—encouragement of invention and disclosure of ideas—but is in fact in harmony with them." Id., 275.

The factual situation here is analogous. The plaintiff's cause of action is for a wrongful breach of a contractual, rather than confidential, relationship which similarly is a matter independent of the patent laws. See *New Marshall Engine Co.* v. *Marshall Engine Co.,* 223 U.S. 473, 478, 32 S. Ct. 238, 56 L. Ed. 513 (1912).

As we have determined that the Superior Court has jurisdiction to determine the enforceability of an assignment contract, a resolution of this issue will resolve the related issues of ownership of the invention and the patent if and when issued. This case, therefore, must be remanded to decide the issue of the enforceability of the assignment contract.

As to whether the plaintiff, pursuant to the agreement, must pay all of the defendant's expenses incurred in connection with the invention, it must preliminarily be determined whether the contract is enforceable. The trial court, without addressing the enforceability of the entire contract, found that paragraph three of the agreement was enforceable. Paragraph three states in part: "The Company shall pay all expenses incurred in the obtaining or preservation of patents (or other legal protection) in connection with such inventions, suggestions or contributions."

"The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circum-

stances connected with the transaction." *E & F Construction Co.* v. *Rissil Construction Associates, Inc.,* 181 Conn. 317, 320, 435 A.2d 343 (1980), quoting *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427 (1936). "The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used." *Zullo* v. *Smith,* 179 Conn. 596, 601, 427 A.2d 409 (1980).

In the present case, the defendant sought to have the plaintiff pay for all of his expenses incurred in proceedings and conduct designed to deny the plaintiff's rights to ownership or patent rights in the defendant's invention. Paragraph three is unclear in this regard. We cannot accept the claim that the plaintiff, in drawing up this contract, intended to be contractually responsible for paying all expenses incurred by an employee who seeks to deprive the company of its rights to an assignment. Such an interpretation of this provision would encourage all employees to breach the contract and contest its enforceability with the knowledge that such action would cost the employee nothing.

The court in this case made no factual findings concerning the intent of the parties. The court merely stated that pursuant to paragraph three, the plaintiff was responsible for the defendant's costs. Contracts are to be construed as a whole and all relevant provisions should be construed together. *Lanna* v. *Greene,* 175 Conn. 453, 458, 399 A.2d 837 (1978); *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976); *Cocco* v. *Cocco,* 166 Conn. 37, 41, 347 A.2d 72 (1974). A review of the contract as a whole discloses that, after securing an assignment of an employee's rights to an invention, the company steps into that employee's shoes and becomes financially responsible for expenses incurred in obtaining and protecting any and all rights against the whole world. The contract

does not contemplate paying the expenses of a breaching party in an action to compel compliance with the contract. A major purpose of the entire agreement is to secure for the plaintiff rights to and legal protection for any contribution, suggestion or invention conceived or made by an affected employee. Securing these rights is necessary for the well-being of the plaintiff's business in developing new products and in improving existing products. This purpose is not served by requiring the plaintiff to pay the defendant's fees and expenses to thwart the agreement. If the court's interpretation is correct, the defendant will receive a reward for breaching the agreement. Such an interpretation would strain and violate the express intention of the parties at the time the agreement became effective.

Thus, we conclude that even if the assignment contract is found to be enforceable upon remand, the court erred in holding that paragraph three entitled the defendant to payment for all fees and expenses incurred while attempting to circumvent or avoid altogether his contractual obligations. Whether or not the defendant would be entitled to attorney's fees under some alternative theory is not an issue to be considered at this time.

There is error, the judgment is set aside and the case is remanded with the direction to determine the enforceability of the contract and, if found to be enforceable, to grant specific performance of the agreement not inconsistent with this opinion.

In this opinion the other judges concurred.