[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISMISS #106 CT Page 13017
The plaintiffs, John M. Heath, Fred M. Johnson, and Joseph Casillo, all of whom are former employees of Micropatent, commenced this action on June 9, 1997, seeking legal and equitable relief for the alleged misappropriation of their patent rights and trade secrets. The defendants are Micropatent, a partnership of New York formerly doing business in New Haven, now in East Haven; Opus Publications, a Connecticut corporation; Peter Tracy, general partner, owner and/or manager of Micropatent; Gregory R. Veilleux and William J. Dufault, both of whom are listed on the patent as co-inventors. The defendants move to dismiss the entire complaint for lack of subject matter jurisdiction on the ground that exclusive jurisdiction over the matter is in the federal district court because the claim "arises under" the patent laws. 28 U.S.C. § 1338 (1988).[1]
Practice Book § 143 provides that "[t]he motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . ." Sadlowski v. Manchester, 235 Conn. 637,645-46 n. 13.
"Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject matter of the controversy."Fletcher-Terry Co. v. Grzeika, 1 Conn. App. 422, 426 (1984). "Courts of a state may try questions of title, and may construe and enforce contracts relating to patents." Id., 427. "It is well settled that an action based on a contract, which involves underlying patent rights, does not arise under the patent law."RustEvader v. Cowatch, 842 F. Sup. 171, 173 (W.D.Pa. 1993).
The U.S. Supreme Court has consistently held that "in order to demonstrate that case is one `arising under' federal patent law the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." Christianson v. ColtIndustries Operating Corp., 486 U.S. 800, 807-08, 108 S.Ct. 2166,100 L.Ed.2d 811 (1988). Jurisdiction under § 1338 extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the CT Page 13018 well-pleaded claims." Id. 809.
Under the well-pleaded complaint rule . . . whether a claim `arises under' patent law must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose. . . . Thus, a case raising a federal patent-law defense does not, for that reason alone, `arise under' patent law, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case. . . . Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential. If on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of the patent laws why the plaintiff may or may not be entitled to the relief it seeks . . . then the claim does not "arise under" those laws. . . . Thus, a claim supported by alternative theories in the complaint may not form the basis for § 1338 (a) jurisdiction unless patent law is essential to each of those theories.
(Citations omitted; internal quotation marks omitted.) Id., 809-10. "Under Christianson, every theory of a claim as pled must depend on patent law if there is to be federal jurisdiction."American Tel. Tel. v. Integrated Network, 972 F.2d 1321,1324 (Fed. Cir. 1992).
In this case the basic allegations of the complaint, incorporated in all five counts, are that the three plaintiffs jointly invented a method for placement of a self-adhesive label on compact discs so that the labels were properly aligned and applied to CD-ROMs, for which a patent application was filed on March 24, 1995, and issued on August 6, 1996 (¶ 19), listing Heath Johnson, Casillo, Veilleux, and Dufault as co-inventors. The plaintiffs allege that Veilleux and Dufault did not actually take part in the invention ¶¶ 10, 11), and that Casillo, Johnson, and Heath, are the "inventors and true owners of the patent" (¶ 13). Three contracts are alleged: an employee confidentiality agreement, which Heath "affixed his signature to" on December 31, 1992 (¶ 14); an otherwise unidentified "agreement" that Heath affixed his signature to on June 10, 1994 (¶ 15); and an assignment which all three plaintiffs, plus Veilleux and Dufault, affixed their signatures to on April 3, 1995 (¶ 16). The plaintiffs claim that these agreements were without consideration and did not divest them of their ownership of the patent. Subsequent to April 3, 1995, the plaintiffs were CT Page 13019 terminated or otherwise separated from their employment with Micropatent (¶ 24).
Further allegations are made only against Micropatent, Opus Publications, and Peter Tracy, and allege that they have asserted ownership in the invention and patent and have utilized them to manufacture and merchandise products (¶¶ 17, 18). Furthermore, these defendants are using the trademark name "NEATO" (¶ 19), and as a result of their use of the plaintiffs' invention have obtained great sums of money (¶ 20).
Of the five counts of the complaint, three counts clearly do not involve a question of patent law. Count three, which adds additional allegations, also incorporated into counts four and five, claims that the defendants have "appropriated the proprietary interest" of the plaintiffs in their invention (¶ 26), and that the process the plaintiffs developed constitutes a trade secret which the defendants have usurped to their own benefit (¶¶ 26, 27). A trade secret is distinct from a patent, and the determination of whether the invention qualifies as a trade secret belonging to the plaintiffs is a question of state law. Plastic and Metal Fabricators. Inc. v. Roy,163 Conn. 257, 265-66 (1972); see also Robert S. Weiss Associates, Inc.v. Wiederlight, 208 Conn. 525, 538 (1988) (factors used to determine whether information is a trade secret). Counts four and five are brought pursuant to Connecticut statutes, the former alleging a trademark violation under General Statutes §35-11a et seq., and the latter seeking relief under General Statutes § 35-34, a provision of the Connecticut Antitrust Act. These causes of action were not created by patent law, nor do they invoke substantial questions of federal law.
Counts one and two are more problematical. While count two is a claim to quiet title, a cause of action created by state law, the defendants argue that in this case it necessarily involves the resolution of the question of inventorship, which is an issue arising under the patent laws. As to count one, the defendants argue that it is actually, a patent infringement claim disguised as a state law claim. The essence of count one is contained in paragraph 23, which claims that the plaintiffs "are entitled to monies received by the defendants, for the unauthorized use of their discovery, development, invention, patent, reduction to practice, and product" and seeks the transfer to the plaintiffs of all rights to the invention and CT Page 13020 patent. The plaintiffs claim that this is a cause of action in conversion of property, the property being the patent, and that the claim is based entirely on the unenforceability of certain agreements due to the lack of consideration.
The question for this court is whether the resolution of the issues raised in the complaint necessarily requires the resolution of the questions of patent inventorship or patent infringement. If so, exclusive jurisdiction resides in the district court.
The defendants argue that because the plaintiffs have contested the status of Veilleux and Dufault as inventors, the resolution of the inventorship issue is necessary in order to grant the requested relief. The district court has exclusive subject matter jurisdiction over disputes raising a joint inventorship dispute among contending co-inventors. MCV, Inc. v.King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989). A party seeking to have his or her name added to a patent as co-inventor or to challenge the inclusion of another's name brings an action in district court pursuant to 35 U.S.C. § 256. Id.;Brown v. Regents of the University of California, 866 F. Sup. 439
(N.D.Cal.), appeal dismissed, 47 F.3d 1179 (Fed. Cir. 1994).
"It is elementary that inventorship and ownership are separate issues. An application for a patent must be made by or on behalf of the actual inventor or inventors of the subject matter claimed therein. . . . Thus, inventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is the question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property." Beech Aircraft Corp. v. EdoCorp., 990 F.2d 1237, 1248 (Fed. Cir. 1993). "At the heart of any ownership analysis lies the question of who first invented the subject matter at issue, because the patent right initially vests in the inventor who may then, barring any restrictions to the contrary, transfer that right to another, and so forth. However, who ultimately possesses ownership rights in that subject matter has no bearing whatsoever on the question of who actually invented that subject matter." Id.
Questions of ownership and inventorship, then, may be intrinsically linked or completely separate depending on the facts of the case and the remedy being sought. In Roach v.Crouch, 524 N.W.2d 400, 402 (Iowa 1994), the parties were in CT Page 13021 dispute over who invented the device at issue. Roach claimed sole inventorship, and did not sign the patent application submitted by Crouch that listed both Roach and Crouch as co-inventors, nor did he sign the assignment of the patent rights to the corporate defendant. Roach brought an action to have the patent itself corrected and sole inventorship and ownership vested in him. The state court held that his cause of action arose under 35 U.S.C. § 256, which creates the "exclusive vehicle for correction of a bona fide mistake in joining a person as inventor." Id., 403.
The plaintiffs in this case are not seeking to have the patent corrected, even though their complaint includes allegations that Veilleux and Dufault were incorrectly listed as co-inventors. Even if the patent were corrected, it would not advance the plaintiffs' claims, because they would not then be any closer to regaining ownership of the patent themselves; the assignment to Micropatent was allegedly made by all five of the originally listed co-inventors (¶ 16). Moreover, the allegations of conversion are not made against Veilleux and Dufault, only Micropatent, Peter Tracy, and Opus Publications (¶ 17). The presence of Veilleux and Dufault in the case is explained by the existence of the claim to quiet title. When such a claim is asserted, all parties who may have a colorable claim to the property must be named as defendants. Gemmell v.Lee, 42 Conn. App. 682, 686 n. 5 (1996). Regardless of Veilleux's and Dufault's possible interest in the patent, this court can render a decision on the ownership question presented by the plaintiffs without deciding whether Veilleux and Dufault were actually co-inventors or not.
The defendants also rely on RustEvader Corp. v. Cowatch,supra, 842 F. Sup. 171, but again the language they extract from that case does not apply to the claims in the present case. InRustEvader, a patent was issued to Cowatch, Jr., and Cowatch, Sr., as co-inventors. During the period just prior to the patent application, Cowatch, Jr., had been employed by the RustEvader Corp. and had signed an employee confidentiality, assignment, and non-competition agreement. RustEvader brought an action against both Cowatch, Jr., and Cowatch, Sr., claiming that it was the rightful owner of the patent because of the contract it had with Cowatch, Jr. In arguing against removal to the district court, RustEvader attempted to characterize the claims as deriving only from the contract and its breach by Cowatch, Jr. The court held that due to the presence of Cowatch, Sr., in the case, who was CT Page 13022 not in privity of contract with the plaintiff, the issue of inventorship had to be resolved, because only if Cowatch, Jr., were found to be the sole inventor would RustEvader be able to enforce its contract against him. Unless the claim were characterized as coming under § 256 to challenge inventorship, the plaintiffs would have no claim against Cowatch, Sr., because he was not a party to the contract it claimed was controlling. The defendants in the present case argue that the presence of Veilleux and Dufault, who are not in privity of contract with the plaintiffs, indicates that the claim is really an inventorship dispute. The present case does not present a situation in which a person, who is asserting ownership of the patent, is not a party to the agreements at issue. Veilleux and Dufault are not asserting ownership of the patent, and their assignment of their rights to Micropatent is not in issue. The fact that the plaintiffs are not in privity of contract with Veilleux and Dufault is irrelevant to their claim of conversion against the other defendants.
The claims raised do not require a determination that the three plaintiffs were the sole inventors and Veilleux and Dufault were not.
The defendants also argue that the plaintiffs' claim raises a question of patent infringement, basing their argument on the allegation in count one that the defendants' use of the process is an "unauthorized use" (¶ 23), and claiming that the plaintiffs have pleaded the necessary elements for infringement and sought the appropriate remedy provided by the patent laws, which is enough to invoke federal jurisdiction. Plaintiffs claim that they have pleaded only a cause of action in conversion.
An allegation of "unauthorized use" is consistent with a conversion claim. "Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm."Falker v. Samperi, 190 Conn. 412, 419-20, 461 A.2d 681 (1983). The relief requested, money damages and return of the property, is also consistent with conversion. See Lawson v. Whitey's Frame
CT Page 13023Shop, 241 Conn. 678, 689-90 (1997) (actual damages awarded for deprivation of property); Waterbury Petroleum Prod. v. Canaan Oil Fuel, 193 Conn. 208, 222-23 (1984) (compensation for actual money loss during the period of deprivation and consequential damages allowable).
To make out a prima facie case in conversion, a plaintiff must allege that 1) the property at issue rightfully belongs to him, 2) the defendant deprived him of the use of this property for a period of time, 3) that the defendant's conduct was unauthorized, and 4) that the defendant's conduct harmed him.Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303, 309 (1993). The plaintiffs' complaint contains the necessary allegations for a cause of action in conversion. They allege that they are the "true owners of the patent" (¶ 13), that the defendants "have asserted ownership" of the patent and deprived the plaintiffs of its use (¶ 17), that the defendants' conduct was unauthorized (¶ 23), and they have been harmed because they have "never received any funds" from the use of their invention (¶ 18, 21). While these allegations may not be as clearly stated as they might be, construing the complaint in the light most favorable to the plaintiffs, the allegations in count one do support a theory of conversion.
The necessary elements of a patent infringement claim are 1) ownership of a patent still in force, and 2) infringement by defendants. Kunkel and Topmaster International, Inc.,906 F.2d 693, 695 (Fed. Cir. 1990). The plaintiffs have not adequately pleaded the first element — although the plaintiffs claim an ownership interest in the patent, they do not claim to have actual ownership. Their complaint challenges the defendants' assertion of ownership based on the invalidity of the assignment contract. Assignment contracts and licensing contracts have different legal effects, and which one the plaintiff is bringing suit under determines whether the plaintiff can make an infringement action. Jim Arnold Corp. v. Hydrotech Systems,Inc., 109 F.3d 1567 (Fed. Cir. 1997).
"The general rule is that where an action is brought to enforce, set aside, or annul a contract, the action arises out of the contract, and not under the patent laws, even though the contract concerns a patent right." Combs v. Plough, Inc.,681 F.2d 469, 470 (6th Cir. 1982). See also Beghin-Say Int'l v.Rasmussen, 733 F.2d 1568, 1471 (Fed. Cir. 1984) (no jurisdiction over a contract to assign future patent rights). CT Page 13024
Plaintiffs are claiming that they have been deprived of their ownership of the patent, they are not asserting a patent infringement claim. See RAD Data Communications, Inc. v. PattonElectronics, 882 F. Sup. 351, 353 (S.D.N.Y.), appeal dismissed,64 F.3d 675 (Fed. Cir. 1995) (plaintiffs have no standing to invoke subject matter jurisdiction under 28 U.S.C. § 1338 (a) without valid legal title to the patents during the time of infringement); Ortho Pharmaceutical Corp. v. Genetics InstituteInc., 52 F.3d 1026, 1030 (Fed. Cir. 1995) (to have standing as co-plaintiff, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share than for an assignment and standing to sue alone).
Plaintiffs' complaint does not "arise under" the patent laws for purposes of jurisdiction under 28 U.S.C. § 1338. None of their causes of action are created by federal law, and their state claims do not necessarily require the resolution of a substantial federal claim. Accordingly, the defendants' motion to dismiss is denied.
Fracasse, J.