[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Defendant, Burlington Construction Co., Inc. entered into a contract prior to August 11, 1994 with the State of Connecticut Department of Transportation (DOT) Project No, 82-231 for the expansion of a DOT maintenance facility in Middletown, Connecticut. Thereafter, on August 11, 1994 defendant and plaintiff entered into a subcontract whereby plaintiff was to furnish all labor, materials and equipment necessary to complete all asphalt and curbing work, fine grading, saw cutting of existing asphalt and pavement reclamation work in accordance with contract documents. All of this work to be performed on the DOT project. For this work plaintiff was to be paid $32,000 in accordance with the contract. It is undisputed that that amount was paid.
Section 11 of the subcontract between plaintiff and defendant provides for the manner in which extra or additional work ordered shall be done and compensated for and that section reads in part as follows:
 SECTION 11. EXTRA WORK, AUTHORITY AND FAMILIARIZATION WITH SITE AND WORK. The Subcontractor shall make no claim for extra or additional work unless the same shall be done in pursuance of a written change order executed by an executive officer of the Contractor. If in the performance of the general contract, the Contractor shall order in writing extra work to this contract but not extra to the general contract, at the option of the Contractor, the Subcontractor shall charge either an agreed lump sum or at the option of the contractor, the cost of said work plus ten percent (15%) (sic) for profit, overhead, supervision and tools and which total shall constitute the entire amount due Subcontractor for the extra work.
CT Page 4804
 In the event the Subcontractor claims any work directed to be performed by it involves extra or additional work, it shall within three (3) days after receipt of such direction and before the next ensuing payment and before proceeding therewith make written claim therefor giving in detail the basis of its contention and a detailed break down showing separately additional cost of labor and material. Upon written direction by the Contractor, Subcontractor shall promptly proceed with such work, and should the Contractor rule said work is not extra or additional, the Subcontractor may reserve its claim therefor by written protest given within three (3) days after notice to proceed. Claims for damages by reason of any act or omission of the Contractor shall be made in writing within three (3) days after the initiation of such act or omission. Failure to make written notice of claim within the time and in the manner herein provided shall constitute a waiver thereof and no recovery therefor can be had. In no event shall Contractor be liable for work performed under protest except to the extent it may recover therefor from the owner less expenses, etc. as provided herein.
 It is understood and agreed that the functions and powers of the employees of the Contractor are strictly limited to the execution of this work hereunder, as defined by this contract, and that they have no authority to make, permit, or authorize any alteration, change, or departure in or from the terms and provisions of this contract or the plans and specifications, or to waive any right of the Contractor. The Job Superintendent and/or Project Manager shall have authority to make decisions pertaining to the execution of the work hereunder as the work progresses.
Work commenced in accordance with the contract in the fall of 1994. The State of Connecticut DOT thereafter, in November, 1994 requested some additional work to be done concerning removal of materials and installation of sub base materials. For his work plaintiff submitted a proposal to defendant for $32,120. (Plaintiff's Exhibit I). While an employee of defendant may have agreed to $30,000 payment for same, the parties later agreed on the sum of $25,252. No change order was CT Page 4805 issued at the time that the work was performed but a change order incorporating that agreed upon amount was signed by both parties and dated 4/3/95. (Plaintiff's Exhibit D) Plaintiff was paid on that amount.
Plaintiff claims that that amount did not include additional paving work that was requested by DOT. By written request (Plaintiff's Exhibit C) in late December, 1994, DOT had requested additional paving in the amount of $18,200. Defendant claims that that was included in the change order of April 1995 as lumped in with the above work. Plaintiff testified that he was on the job every day but probably did not check the site plan. He testified that he did not know how much paving was done or how much he had to do. He further testified that in September 1995 he first realized that he must have done extra paving because his asphalt cost was so high. (He also testified that he did not realize this until 1996). However, Mr. Padula, his estimator said that he knew that extra paving had been done in April 1995 and told plaintiff at that time. Defendant contends that that amount was included in the change order and plaintiff was paid therefor. No attempt was made by plaintiff to comply with the contractor's change orders and he never supplied defendant with cost plus 15% figures. Plaintiff failed to sustain his burden of proof by credible evidence that defendant was unjustly enriched by any additional paving work that it claimed to have performed.
Another extra to the contract requested by DOT was slope stabilization work sometimes referred to as barrier work. Plaintiff performed the same in 1994 and claimed it as an extra in 1996. Plaintiff had agreed to perform same for $15,000 as set forth in the April 3, 1995 change order. At some point during the work, long before April 1995, the state requested that the barriers be one foot higher and that there be an additional barrier put in place. Plaintiff did not have to supply the barriers as the DOT supplied same to plaintiff for installation. Sometime later defendant submitted plaintiff's claim for extra work and it was denied by the DOT. The court finds that the item of $15,000 for slope stabilization (concrete barriers) in the change order (Plaintiff's Exhibit D) encompassed plaintiff's costs, and plaintiff was paid for same.
The last item in dispute was the pavement reclamation work and plaintiff claims $1602 for additional excavation and disposal of unsuitable material and $4984 for additional CT Page 4806 installation of process base material. The claimed reason for this additional work was a dispute between plaintiff and the DOT when plaintiff encountered unsuitable material in the area to be worked on and plaintiff was ordered by DOT to remove the unsuitable material, plaintiff claiming that DOT personnel had put it there and DOT claiming that it was due to plaintiff's improper performance of his work. DOT refused to pay or recognize extras for this work. It appears to the court that this work was covered by the specification of the original contract and any claimed extras are noncompensable. (Plaintiff's Exhibit A)
Plaintiff was paid $32,000 under the original contract and $40,250 in extras. Defendant never submitted or testified to cost plus figures for extras as required by Art. 11 of the contract. The plaintiff claimed damages under a quantum meruit theory. The court finds that the plaintiff did not sustain its burden of proof of same.
 "[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." Burns v. Koellmer, 11 Conn. App. 375, 385
(1987). "[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations." H.B. Toms Tree Surgery, Inc. v. Brant, 187 Conn. 343, 347 (1982); Polverari v. Peatt, 29 Conn. App. 191, 224 Conn. 913 (1992).
 In determining the scope of a contract, "[t]he plain, clear language of the contract must be accorded its logical effect." Four D's, Inc. v. Mattera, 25 Conn. App. 308, 313 (1991). "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used."' E F Construction Co. v. Rissil Construction Associates, Inc., 181 Conn. 317, 320, 435 A.2d 343 (1980); Fletcher-Terry Co. v. Grzeika, 1 Conn. App. 422, 430-31
(1984). "In situations in which the parties have CT Page 4807 their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." (Internal quotation marks omitted.) Thompson Peck, Inc. v. Harbor Marine Contracting Corporation, 203 Conn. 123, 130-31 (1987). "Normally, a determination of what the parties intended by contractual commitments is 'a question of fact, reversible only if the trier of fact could not reasonably have arrived at the conclusion it had reached'; Thompson Peck, Inc. v. Harbor Marine Contracting Corporation, [supra, 130]; but `[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.' Id., 131, Terms cannot be added to a contract by interpretation. Connecticut Union of Telephone Workers v. Southern New England Telephone Co., 148 Conn. 192, 200 (1961); Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 158 (1991).
Clearly, the plaintiff did not comply with contract provisions for claiming extra work, never having submitted cost plus 15% figures, nor did he do so at trial. In Section 11, the contract sets forth time limitations in which extras were to be claimed. These also were not complied with by plaintiff. That section also provides that [F]ailure to make written notice of claim (of extra work) within the time and in the manner herein provided shall constitute a waiver thereof and no recovery therefor can be had.
The court finds for the defendant. Judgment shall enter accordingly.
KULAWIZ, J.