[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS BASED UPON CLAIM OF PATENT INFRINGEMENT
On January 6, 1999, the plaintiffs, Josef Jancar, Ph.D. and Advanced Dental Materials, A.G. (ADM), filed a five count complaint with the Superior Court against the defendant, Jeneric/Pentron Corp., alleging that as a result of the defendant's misappropriation of the plaintiffs' trade secrets, the plaintiffs have suffered and continue to suffer economic damages.
According to the complaint, the plaintiff, Jancar, held an exclusive licensing agreement with the University of Connecticut (UCONN), to manufacture, market and sell all products, components and related methods or processes covered by a "Patented Technology" held by UCONN. Under this agreement, Jancar was to develop a marketable product based on the Patented Technology, and to form a corporation that would assume all rights and obligations of the license. Jancar formed ADM for this purpose, and proceeded to develop three marketable dental products, as well as many trade secrets and processes, all of which he shared in confidence with UCONN.
Thereafter, Jancar commenced negotiations with the defendant, in an effort to find a supplier of certain resins for his products, and a distributor for the products. During said negotiations, Jancar disclosed certain trade secrets and marketing data to the defendant. Upon receiving this information, the defendant proceeded to induce UCONN to breach its exclusive licensing agreement with Jancar, and to grant the defendant the exclusive license under the patent. In return, the defendant gave UCONN a $75,000 grant. After receiving the license, the plaintiffs allege that the defendants used the plaintiffs' trade secrets to develop, market and sell certain products of their own. The plaintiffs subsequently filed this five count complaint against the defendant.[1]
Count one alleges that the defendant acquired the plaintiffs' trade secrets through improper means and used them without the plaintiffs' consent, in violation of General Statutes § 35-50 et seq. Count two alleges that the defendant committed tortious CT Page 9409 interference with the exclusive licensing contract that the plaintiffs held with UCONN. Count three alleges that the defendant committed tortious interference with business relations between the plaintiffs and UCONN. In count four, the plaintiffs allege that the defendant has been unjustly enriched, since it received and accepted the benefits of the plaintiffs work, labor and services. Finally, count five seeks damages under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b, and alleges that the defendant engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of its trade.
On February 19, 1999, the defendant filed a motion to dismiss the plaintiffs' complaint and supporting memorandum, on the ground that the state court lacks subject matter jurisdiction over this matter. On March 17, 1999, the plaintiffs filed a memorandum in opposition to the defendant's motion to dismiss.
"A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court. . . . The grounds which may be asserted in this motion [include]: (1) lack of jurisdiction over the subject matter. . . ." Zizka v. WaterPollution Control Authority, 195 Conn. 682, 687, 490 A.2d 509
(1985). "It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawerence Brunoli, Inc. v. Town of Branford,247 Conn. 407, 410-11, 722 A.2d 271 (1999).
The defendant moves to dismiss the complaint based upon a portion of the plaintiffs' claim for relief under counts one and five. In that claim, the plaintiffs seek, among other things, a temporary, preliminary and permanent injunction against the defendant and its agents, servants and employees, preventing them from making, using or selling any product derived from the Patented Technology. The defendant argues that based on the relief sought, the plaintiffs are pursuing a claim of patent infringement, as opposed to misappropriation of trade secrets, and thus, the state court lacks subject matter jurisdiction.
It is undisputed that federal courts have exclusive jurisdiction of all cases arising under the patent laws. See 35 U.S.C. § 1338 (a). The courts of Connecticut have routinely CT Page 9410 recognized this preemption. See Plastic Metal Fabricators, Inc.v. Roy, 163 Conn. 257, 267, 303 A.2d 725 (1972); Fletcher-TerryCo. v. Grzeika, 1 Conn. App. 422, 426, 473 A.2d 1227 (1984);Heath v. Micropatent, Superior Court, judicial district of New Haven at New Haven, Docket No. 401481 (December 10, 1997,Fracasse, J.) (21 Conn. L. Rptr. 145).
The United States Supreme Court has rule that "in order to demonstrate that a case is one `arising under' federal patent law the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." (Internal quotation marks omitted.) Christianson v. Colt Industries Operating Corp.,486 U.S. 800, 807-08, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Federal jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded complaints." Id., 809; see also Heath v. Micropatent, supra, 21 Conn. L. Rptr. 146.
"Under the well-pleaded complaint rule . . . whether a claim `arises under' patent law must be determined from what necessarily appears in the plaintiffs statement of his own claim in the bill or declaration. . . . If on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks . . . then the claim does not `arise under' those laws." (Citations omitted; internal quotation marks omitted.)Christianson v. Colt Industries Operating Corp., supra,486 U.S. 809-10.
Federal courts do not, however, have exclusive jurisdiction "of all questions in which a patent may be the subject matter of the controversy." Plastic Metal Fabricators, Inc., v. Roy, supra, 163 Conn. 267; see also Fletcher-Terry Co. v. Grzeika, supra, 1 Conn. App. 426. The Connecticut courts have determined that "`[c]ourts of a state may try questions of title, and may construe and enforce contracts relating to patents.'"Fletcher-Terry Co. v. Grzeika, supra, 1 Conn. App. 427, quotingNew Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 473, 478,32 S.Ct. 238, 56 L.Ed.2d 513 (1912). Moreover, "`[i]t is well CT Page 9411 settled that an action based on a contract, which involves underlying patent rights, does not arise under the patent law.'"Heath v. Micropatent, supra, 21 Conn. L. Rptr. 146, quoting RustEvader v. Cowatch, 842 F. Sup. 171, 173 (W.D. Pa. 1993). Further, in Transparent Ruler Co. v. C-Thru Ruler Co., 129 Conn. 369,28 A.2d 232 (1942), the court held that the state courts retained subject matter jurisdiction of a case involving patent issues where "[n]either the validity nor infringement of . . . [the] patent was in issue." Id., 373. Thus, in Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 618 A.2d 25
(1992), the court entertained a claim for the return of a non-refundable payment made pursuant to a patent licensing agreement. In Levine v. Massey, 232 Conn. 272, 654 A.2d 737
(1995), the court decided a case involving a dispute over royalties under a licensing agreement as to ownership of the patent. State courts may, therefore, legally entertain cases in which patents are present, but not the determinative issue in the case.
It is necessary for the court to determine whether the information that the defendant allegedly misappropriated from the plaintiffs qualifies as "trade secrets," or if, in fact, this is a case of patent infringement, which should be heard in the federal court. General Statutes § 35-51 (d) defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
In Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525,546 A.2d 216 (1988), the court noted that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound . . . or a list of customers." (Internal quotation marks omitted.) Id., 538; see also Allen Mfg. Co. v. Loika, 145 Conn. 509, 516,144 A.2d 306 (1958) (noting that a trade secret may also consist of "a process of manufacturing, treating or preserving materials, [or] a pattern for a machine or other device"). "The factors used to determine whether given information is a trade secret include the CT Page 9412 extent to which the information is known outside the business and by employees and others involved in the business, the measures taken by the employer to guard the secrecy of the information, the information's value to the employer and to competitors, the resources the employer expends in developing the information, and the ease or difficulty with which the information could be properly acquired or duplicated by others." Weiss Associates,Inc. v. Wiederlight, supra, 538; see also 4 Restatement (First), Torts § 757, comment b (1938). "In reviewing these factors, 4 courts also look to (1) the extent to which the . . . relationship was a confidential or fiduciary one; (2) the method by which the . . . [defendant] acquired or compiled the alleged secret; . . . and (4) the unfair advantage accruing to the . . . [defendant] from the use of . . . [the] alleged secret." HolidayFood Co. v. Munroe, 37 Conn. Sup. 546, 551, 426 A.2d 814
(App.Sess. 1981).
In Plastic Metal Fabricators, Inc. v. Roy, supra,163 Conn. 266, the court noted that "[t]rade secret law, a part of that branch of law known as unfair competition, is governed by the state substantive law. . . . A suit for wrongful disregard of a confidential relationship is a matter independent of the patent laws." (Citations omitted.) Id. In that case, the plaintiff had developed a process to remove metal contaminants from waste water, and hired the defendant as a consultant on this and other pollution matters. The plaintiff informed the defendant of various trade secrets, including its "process," and stressed that they were to be kept in confidence. After working with the plaintiff for some time, the defendant proceeded to file an application for a patent on the process, claiming it as his own. The plaintiff filed a claim against the defendant based on misappropriation of trade secrets, and on appeal, the Connecticut Supreme Court affirmed the lower court's issuance of an injunction, noting that the trial court's determination that "the plaintiff's . . . process is a trade secret which it is entitled to have protected" was supported by the court's findings. Id., 262-63.
Other jurisdictions have determined that "if the validity of a patent or patent ability is the principal issue involved, then the jurisdiction of the federal courts is exclusive." VanProducts Co. v. General Welding Fabricating Co., 419 Pa. 248,213 A.2d 769, 772 (1965). If, however, the gravamen of the action is one party's misappropriation, proper jurisdiction lies with the state courts. See id. In Van Products Co., the plaintiff CT Page 9413 sought injunctive relief and an accounting in Pennsylvania state court from the defendant, who allegedly used the plaintiff's trade secrets to both secure a patent and to make, advertise and sell similar products. The injunction was granted, and the defendants appealed. The Pennsylvania Supreme Court upheld the lower court's issuance of an injunction and an accounting, holding that jurisdiction was proper in the state court because "patent rights are only indirectly involved. . . ." Id. "The pivotal and main issue . . . is whether or not the appellants caused damages to [the plaintiff's] business through the use of confidential material misappropriated [by the defendant]. . . ." Id., 773. The court held that "the existence of patent rights is not controlling. Infringement actions may be prosecuted in the federal courts, and existing patent rights may be unchallengeable in a state court; however, appellants' right to manufacture and sell the [product] involved depends upon how the knowledge in connection therewith was obtained. This is the issue here. It is not a `patent case.'" Id.
Although not ultimately controlling, the facts of VanProducts Co. are similar to the facts of this case. In the present case, the plaintiffs allege that the defendant misappropriated trade secrets from them, and used them to develop, market and sell products of their own. Although there is an underlying patent which is held by UCONN, the issues raised by the plaintiff involve trade secrets and represent independent causes of action. Under the reasoning of Van Products Co. and previously mentioned Connecticut cases, whether the defendant misappropriated trade secrets in an effort to induce UCONN to breach its licensing agreement with the plaintiff, and whether the defendant continues to unlawfully use the plaintiffs' trade secrets in the manufacture of its own products, are questions of state law. The mere fact that the allegedly misappropriated trade secrets are being used by the defendant in furtherance of an underlying patent is incidental, and not reason enough to cause the state courts to lose subject matter jurisdiction.
Applying these standards to the facts as the plaintiff has presented them, it is clear that the information which the plaintiff conferred to the defendant for the purposes of negotiation constituted a trade secret. The trade secrets which the plaintiffs claim were misappropriated include the various products that the plaintiffs developed while working in conjunction with UCONN, as well as the advantages of certain methods of specific resins for the products, the advantages and CT Page 9414 necessities in manufacturing the product at certain physical dimensions, and marketing research showing the profitability for the products. The plaintiffs state that the trade secret information was developed at great effort and expense, and was carefully maintained as confidential, secret information. This information, despite the existence of UCONN's patent, derived independent economic value, both actual and potential, from not being generally known to or readily ascertainable by proper means by other persons. The products were not yet introduced to the market, and no other manufacturers had access to the information. The plaintiffs made this coveted information available to the defendants only during negotiations in an effort to secure a supplier of certain resins and a distributer of the products that the plaintiffs had created. In turn, the defendant used these trade secrets against the plaintiffs, by inducing UCONN to breach its contract with the plaintiffs and grant the defendants the exclusive license under the patent. After securing the license with UCONN, the defendant then proceeded to use these trade secrets to develop, market and sell products of its own. This alleged unauthorized use of the plaintiffs' trade secrets is the behavior that the plaintiffs seek to enjoin.
General Statutes § 35-51 provides in relevant part: "(a) `Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy. . . . (b) `Misappropriation' means: (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret. . . ." Pursuant to General Statutes § 35-52, injunctive relief is available for acts of misappropriation. Under the federal laws, 35 U.S.C. § 283[2]
also provides injunctive relief in cases of patent infringement. The Code, in 35 U.S.C. § 271 (a), defines patent infringement as follows: "[Whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In this case, although there exists a valid patent, it is held by UCONN, and not the plaintiff. The wrongs which the plaintiffs claim the defendant has committed involve misuse of the plaintiffs' trade secrets, not the patent itself. The plaintiffs do not seek enforcement under the patent. The plaintiffs merely seek adjudication of the misuse of the plaintiffs' trade secrets by CT Page 9415 the defendants. For it is not the products which the defendant is making that the plaintiffs seek to enjoin, but rather, the use of the trade secrets in making those products. The alleged misuse of the plaintiffs' trade secrets permitted the defendant to induce UCONN to breach its contract with the plaintiff, and allowed the defendant to use the information to develop, market and sell its own products. The fact that the defendant is using these trade secrets to further the goals of the patent is immaterial.
Finally, it is necessary to briefly address the issue raised by the defendant that CUTPA does not provide the injunctive relief sought by the plaintiffs. The defendant is correct in its allegation that the court's injunctive power under CUTPA is restricted to enjoining wrongful actions involving a party's trade secrets. The defendant argues that CUTPA does not provide injunctive relief in this case, as the plaintiffs are seeking to enjoin the use of the Patented Technology. Since the plaintiffs are seeking relief based on trade secrets as opposed to patent infringement, then the defendant's argument regarding CUTPA on this point is moot. CUTPA clearly permits the court to enjoin wrongful actions involving a party's trade secrets.
Moreover, it is not necessary, as the defendant suggests, for the court to first find the defendant guilty of patent infringement before concluding that the defendant was unjustly enriched. The defendant cites to Deats v. Joseph Swantak, Inc.,619 F. Sup. 973 (N.D.N.Y. 1985), in support of the proposition that there must be a patent infringement determination first before addressing a plaintiffs unjust enrichment action. In that case, however, the plaintiff claimed that the defendant's enrichment was unjust precisely because of the plaintiff's ownership of the patent and the defendant's use of the patent without payment. Here, the plaintiffs do not own the patent, but rather, own trade secrets developed in furtherance of the patent. The plaintiffs merely assert that the defendant has been unjustly enriched based on the unlawful use of the plaintiffs' trade secrets, as opposed to infringing upon a patent. The court finds that Deats is unpersuasive and inapplicable to the facts of this case.
Inasmuch as, the plaintiffs are seeking protection from the unauthorized use of trade secrets, as opposed to patent infringement, the defendant's motion to dismiss the plaintiff's complaint on the grounds of preemption is denied. CT Page 9416
Clarance J. Jones, Judge